## EX PARTE.—FRANK KNOWLES.

The power to naturalize is made a judicial power by Act of Congress.

Congress cannot confer any judicial power upon a State Court.

The provision of the Constitution of the United States, which gives Congress the power to establish " an uniform rule of naturalization," is construed to mean, that the rule when established shall be executed by the States.

Under the Act of Congress of 1802, " every Court of Record in any individual State, having common law jurisdiction and a seal, and clerk or prothonotary, shall be considered as a District Court within the meaning of this Act," and such Courts have power to naturalize.

The Supreme Court of this State having exclusive appellate jurisdiction, has no power to naturalize.

The Legislature of California has by express enactment, conferred jurisdiction on the District Courts of this State to grant naturalization, according to the rules established by Congress.

All other Courts of this State, being Courts of inferior and limited powers, and although some are Courts of Record, yet having only statutory, and not common law jurisdiction, they have no power to grant naturalization, and any attempt of the kind by them would be *coram non judice*, and void.

HEYDENFELDT, J., delivered the opinion of the Court. MURRAY, C. J., and BRYAN, J., concurred.

This is an application on the part of an alien to become naturalized under the provisions of the Constitution and laws of the United States.

It has been made directly to this Court, and has been resisted by several eminent members of the Bar, in the character of *amici curiæ*, on the ground that State Courts have no jurisdiction of the subject matter.

It might be a sufficient answer to the applicant to declare what is the settled decision of this Court,—that it is, under the State Constitution, an appellate tribunal, and can take no original jurisdiction, however conferred.

But the importance of the question which has been argued at the bar, and the learning and research which have been evinced in its examination, induce us, in departure from our usual habit, to consider and determine the proper construction which should be given to the Constitution and laws of the United States, in respect to the question of naturalization. Two propositions which have been made by the counsel opposed to the applicant, will first be disposed of. These are: First—That the power to naturalize by virtue of the Act of Congress of 1802, is a judicial one; and Second—That Congress has no power to confer jurisdiction upon the Courts of a State. Upon both of these propositions we affirmatively concur. It is a judicial power; because upon evidence a conclusion has to be attained, resulting from the exercise of the judgment of the Court. This is simple and clear enough, without resorting to authority. But nevertheless, we will refer to the case of Spratt *v.* Spratt, 4 Peters, 406, where it is distinctly so settled by Chief Justice Marshall.

Congress has no power to confer jurisdiction upon the Courts of a State: because, First, the Constitution gives it no such power; and, Secondly, the Constitution expressly declares that "the judicial power of the United States shall be vested in one Supreme Court and in such inferior Courts as the Congress may from time to time ordain and establish." See §1, Art. 3, Const. U. S.

The Constitution having thus fixed where the judicial power shall be vested, it cannot be vested elsewhere.

There have been various adjudications maintaining this view, which it will be sufficient simply to cite. See Martin *v.* Hunter's Lessee, 1 Wheaton, 304. The State of Maryland *v.* Thomas Butler, reported

in 12 Niles' Register, p. 115; United States *v.* Lathrop, 17 Johnson R., 4.   State *v.* McBride. Rice R., 400.

It was urged in the course of the argument, and some authorities were cited, to the effect, that although Congress could not confer jurisdiction on a State so as to compel its exercise, yet it would be legitimate if the Court was willing to accept it.   This is to me a solecism. A court is a creature of the Constitution and laws under which it exists.   To exercise any power not derived from such Constitution and laws, would necessarily be a usurpation.   It sounds curious to say, " Congress has no authority to give this power to the Court, yet the Court exercises this power by virtue of the authority of Congress."

I come now to the consideration of the main question, whether the State Courts of California, and if so, what State Courts, have the power to naturalize ?—And I have come to the conclusion that this question is but little affected by the propositions which I have been already led to consider, on account of the seeming importance attached to them by the learned counsel, and the able manner in which they were presented.

In § 8, Art. I, of the Constitution, enumerating the powers of Congress, is the following separate clause: " To establish an uniform rule of naturalization and uniform laws on the subject of bankruptcy throughout the United States."   By metaphysical refinement, in examining the form of our government, it might be correctly said that there is no such thing as a citizen of the United States.   But constant usage—arising from convenience, and perhaps necessity, and dating from the formation of the Confederacy—has given substantial existence to the idea which the term conveys.   A citizen of any one of the States of the Union, is held to be, and called a citizen of the United States, although technically and abstractly there is no such thing.   To conceive a citizen of the United States who is not a citizen of some one of the States, is totally foreign to the idea, and inconsistent with the proper construction and common understanding of the expression as used in the Constitution, which must be deduced from its various other provisions.   The object then to be attained, by the exercise of the power of naturalization, was to make citizens of the respective States.

At the time of the adoption of the Constitution, the States had power to make citizens of aliens. Does the clause of the Constitution above quoted deprive them of it?

The true rule of construction as to the exclusiveness of the power of Congress is, First—that it must be granted exclusively; Second—forbidden to the States; Third—from the nature of the power, its exercise by both must be incompatible and incongruous. Does the power under review come within either of these positions? If we examine the language closely, and according to the rules of rigid construction always applicable to delegated powers, we will find that the power to naturalize, in fact is not given to Congress, but simply the power to establish an uniform rule. The States are not forbidden to naturalize, nor is there anything in the exercise of the power by them, incongruous or incompatible with the power of Congress to establish an uniform rule. That the States, if they choose to exercise the power as an original one, must abide by the rule which Congress makes, there cannot be the slightest difference of opinion. The power given to Congress was, according to my apprehension, intended to provide a rule for the action of the States, and not a rule for the action of the Federal Government. Else why was the term "uniform" made to qualify "rule?" If it was designed simply to give the power of making citizens to Congress, simpler modes of expression might have been used, and ought to have been required, and surely there would have been no use for the term "uniform." Why should the rule be uniform, unless more than one had to execute the rule? It certainly could not have been imagined, that Congress would have made a rule for its own action, or the action of its own officers, which could have operated without uniformity.

The States had the power to naturalize foreigners, and there was no necessity for this power to be surrendered to the General Government. But by another clause of the Constitution, §1, Art. 4, it was determined that "the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." It might well have been apprehended, that in the feeble and sparsely populated condition of the States, a race would have been run for the acquisition of population, differing in its radicalism only according to the difference

of opinion as to the danger of the sudden introduction of too large a foreign element; and as, when once admitted to citizenship in one State, the alien would have all privileges in the other States, it would be in effect allowing one State to modify or break down the policy of another. This is made apparent by the discussions which then took place upon the subject. Hence the necessity arose, not that Congress should have power to naturalize, but should have power to prescribe to the States a rule to be carried out by them, and which should be uniform in each. If this were not so, it follows conclusively that there is no mode by which a foreigner can be made expressly a citizen of a State, for I have already shown there is no such thing, technically, as a citizen of the United States. Consequently, one who is created a citizen of the United States, is certainly not made a citizen of any particular State. It follows, that as it is only the citizens of the State who are entitled to all privileges and immunities of citizens of the several States, if the process is left alone to the action of Congress through her federal tribunals, and in the form which they have adopted, then a distinction both in name and privileges is made to exist between citizens of the United States *ex vi termini*, and citizens of the respective States. To the former no privileges or immunities are granted; and it will hardly be contended, that political *status* can be derived by implication against express legal enactments. I cannot concede that such a result was ever contemplated, and yet it would be inevitable upon any other hypothesis, than that the "uniform rule," declared by the Constitution, was intended to be prescribed for the action of the States, and that by this rule they were left to exercise, or not, their original power of naturalization.

The next inquiry which is in proper order is, whether the State of California has determined, by her legislation, to admit foreigners to the rights of citizenship under the uniform rule established by the various Acts of Congress.

This question, in my opinion, is settled in the affirmative by an Act passed May 18, 1853, entitled "An Act to define the fees to be charged by the Clerks of Courts for the naturalization of foreigners." This Act, after providing the amount of fees to be allowed the Clerks in

the process of making citizens, declares: "And said papers herein provided for shall be issued by the Court upon application of any individual entitled to receive them, and upon his complying with the provisions of the naturalization laws."

Much criticism might be indulged upon the form of this law; and upon the fact that its caption shows that it was intended only as a fee bill. But it must be conceded that in the construction of laws, the principal consideration is the intention of the law-maker. Governed by this rule, I have no hesitation in saying that the Act in question is equivalent to a direct and palpable declaration by the Legislature which enacted it, that it recognized the rule of naturalization prescribed for the States by Congress, and determined that the Courts of this State, of competent jurisdiction, should be vested with the power of carrying it out.

If this were not so, there was no reason whatever for passing the Act, and Courts cannot decide an Act to be inoperative where a substantial meaning and design can be drawn from its expressions. In this Act, the Courts are vested with jurisdiction: for they are required to issue the certificates of naturalization and to determine that the individual is entitled to receive them. The laws of Congress (the uniform rule) are recognized as the rule of action; for the term " Naturalization Laws," applies to none other, and their provisions are required, expressly, to be complied with.

What, however, are the Courts of competent jurisdiction ? To answer this, we must turn to the Act of Congress of 1802, and be governed by the rule there established. Congress having power under the Constitution to make the rule, certainly had the right to make the exercise of it a judicial power, and fix upon the class of Courts which might be invested with the jurisdiction. This it could do as a part of the rule, although it might not directly confer the jurisdiction. By the third section of the Act of 1802, it is enacted " that every Court of Record in any individual State, having common law jurisdiction and a seal, and clerk or prothonotary, shall be considered as a District Court within the meaning of this Act."

We have already determined that this Court has not the jurisdiction:

39

because its powers are, exclusively, appellate. The District Courts of this State are Courts of original and common law jurisdiction; are Courts of Record; and have a seal and clerk, and consequently come fully within the description of the rule laid down by the Act of 1802; and, therefore, under the Act of this State of 1853, are fully invested with power and jurisdiction to naturalize foreigners who exhibit the qualifications fixed by the laws of the United States. The other Courts of this State are inferior and of limited powers. They are made Courts of Record by our statutes, but they have only statute and not common law jurisdiction; and, therefore, not coming within the class enumerated by the Act of Congress, have no power to grant naturalization, and any attempt of the kind would be necessarily *coram non judice* and void.

For the want of jurisdiction in this Court the application is denied.