## DALLEMAGNE *v.* MOISAN.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 104. Submitted December 15, 1904.—Decided March 13, 1905.

Power may be conferred upon a state officer, as such, to execute a duty imposed under an act of Congress, and the officer may execute the same, unless its execution is prohibited by the constitution or legislation of the State.

There is no constitutional or statutory provision of California prohibiting the arrest of a seaman on the request of a French consul under the treaty with France of 1853, and such arrest, being for temporary detention of a sailor whose contract is an exceptional one, does not deprive him of his liberty without due process of law, and if the chief of police voluntarily performs the request of the consul the arrest is not illegal on that ground.

The only method of enforcing treaty provisions for arrest of seamen on requisition of foreign consuls is pursuant to the act of June 11, 1864, 13 Stat. 121, now §§ 4079, 4080, 4081, Rev. Stat., and thereunder the requisition must be made to the District Court or judge and the arrest made by the marshal, and an arrest by a local chief of police is not authorized; but if after a seaman so arrested has been produced before the District Court on *habeas corpus* and the court finds that his case

comes under the treaty and he should be held, the mere fact that he was arrested by a person not authorized to do so does not entitle him to his discharge.

After a seaman has been properly arrested on the request of the French consul under the treaty of 1853 with France, he can he held in prison at the disposal of the consul for sixty days, as provided for in § 4081, Rev. Stat., and the court cannot discharge him within that period against the protest of the consul because the vessel to which he belonged has left the port at which he was arrested.

THIS is an appeal on the part of the consul general of the Republic of France from the judgment of the District Court of the United States for the Northern District of California, discharging the defendant Moisan from imprisonment.

The proceeding arises on *habeas corpus,* to inquire into the validity of the detention of defendant in the city prison of San Francisco, in the State of California. His application for the writ was addressed to the District Court of the United States for the Northern District of California, and it showed that he was a citizen of France and was imprisoned by virtue of a requisition in writing, signed by the French consul general residing in San Francisco, and addressed to the chief of police of San Francisco, California, requiring his arrest as one of the crew of the French ship Jacques, then in that port, on account of his insubordinate conduct as one of such crew. (The requisition contained all the averments of facts which would warrant the arrest of the petitioner under the provisions of the treaty of 1853 between the United States and France.) The petitioner also averred that at the time of the making of his application for the writ the ship was not in the port of San Francisco, but had departed therefrom some time before. The petitioner was arrested by the chief of police, under such requisition, on the first day of May, 1903, and since that time had been confined in the city prison of San Francisco. He asserted that his imprisonment was illegal, because the facts set forth did not confer jurisdiction upon the consul or the chief of police, or either of them, to restrain complainant from his liberty, or to imprison him.

The petition was dated the twenty-sixth day of May, 1903, and the writ was issued, returnable before the District Court on the twenty-eighth day of May, 1903. The chief of police produced the body of the defendant, pursuant to the command of the writ, and justified the imprisonment, under the requisition referred to.

The District Court, after hearing counsel, made an order discharging the defendant from arrest, on the ground that it appeared to the court that the bark Jacques, of the crew of which the defendant was a member, had departed from the port of San Francisco, and was no longer in that port. It was further ordered that the execution of the order should be stayed for the term of one day. Immediately thereon the consul general filed with the District Court his petition for appeal to the Supreme Court of the United States from the judgment discharging the defendant from imprisonment, which appeal was duly allowed, and thereupon the petitioner was admitted to bail by the District Court.

*Mr. Walter V. R. Berry* and *Mr. Benjamin S. Minor* for appellant:

The requisition on the chief of police was made in pursuance of the treaty of 1853. The sole reason for the discharge was that the vessel had left the port. The word "their" in the expression "whole time of their stay in port" does not refer to the vessels but to the persons arrested. The construction given by the court below is extraordinary and would render the provision useless. The contract of a sailor is an exceptional one. *Robertson* v. *Baldwin*, 165 U. S. 275, and treaty provisions such as this are usual between civilized nations. *Wildenhus's case*, 120 U. S. 1, 12. The wording of Art. VIII of the treaty is so definite and precise that there is no room for interpretation and the construction put upon it by the court below could be regarded as indicating a purpose to change the law by judicial action. As to interpretation of a plain unambiguous sentence see Am. & Eng. Ency. of Law,

vol. 17, p. 4; vol. 26, p. 598; vol. 28, p. 489; 2 Phillinore, § 70; 1 Halleck Int. Law, ch. VIII, § 39, p. 297; 2 Vattel Droit des Gens, § 263; Calvo, § 1650; *Bale Refrigerating Co.* v. *Sulzberger,* 157 U. S. 1; *Tucker* v. *Alexandroff,* 183 U. S. 424, 437.

A treaty should be carried out in a spirit of *uberrima fides* and construed so as to give effect to the objects designed. *In re Ross,* 140 U. S. 453, 475. Courts will not, if it can be avoided, find any interpretation violating the pledged faith of the Government. *Ropes* v. *Clinch,* 8 Blatch. 304.

*Mr. William Denman* for appellee:

A Federal treaty cannot impose on a state officer a function violating the constitution of the State which he represents in his official character. Const. California, Art. I, §§ 7, 8, 13, 15.

As neither information nor indictment had been filed against Moisan nor was he held pending the preferment of any charges leading to an information or indictment, or any prosecution under California law, Moisan was held in violation of the state constitution. Sec. 1977, Rev. Stat.; *Yick Wo* v. *Hopkins,* 118 U. S. 356.

The same principle of the inviolability of the machinery of a State from Federal interference has been laid down where national stamp duties were attempted to be imposed upon the process of state courts and taxation of salaries. *Warren* v. *Paul,* 22 Indiana, 279; *Jones* v. *Estate of Kesp,* 19 Wisconsin, 390; *Fifield* v. *Close,* 15 Michigan, 505; *Smith* v. *Short,* 40 Alabama, 385.

A Federal treaty cannot compel a State to enforce the penal laws of a foreign country by assisting in extradition or otherwise. The process attempted is in the nature of an extradition of an alleged offender against French law. The State cannot lend its assistance to this. The general rule that a State cannot enforce the criminal laws of a foreign government finds no exception in the state or Federal Constitution. *The Antelope,* 10 Wheat. 66, 123; *Huntington* v. *Attrill,* 146 U. S. 657. Extradition, as a part of the criminal procedure of a foreign

nation, is no exception to the general rule. *Holmes* v. *Jennison*, 14 Peters, 540; *Ex parte Holmes*, 12 Vermont, 631; *People v. Curtis*, 50 N. Y. 321.

Congress has construed the treaty to apply to Federal authorities only and has enacted legislation to carry the treaty into effect with which the appellant has not complied. Rev. Stat. §§ 4079, 4080, 4081.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

This case involves the construction of certain language in the eighth article of the consular convention between the United States and France, concluded on the twenty-third day of February, 1853, and proclaimed by the President of the United States on the twelfth day of August, 1853, the whole convention being still in full force and effect. 10 Stat. 992, 996. The article is reproduced in the margin.[1]

The first objection made by the defendant is to the validity of the requisition of the consul general, because it was directed to the chief of police of San Francisco, he being an officer of the State as distinguished from a Federal officer, the defendant contending that a Federal treaty cannot impose on a state officer, as such, a function violating the constitution of the

---

[1] ARTICLE VIII. The respective consuls general, consuls, vice consuls, or consular agents, shall have exclusive charge of the internal order of the merchant vessels of their nation, and shall alone take cognizance of differences which may arise, either at sea or in port, between the captain, officers, and crew, without exception, particularly in reference to the adjustment of wages and the execution of contracts. The local authorities shall not, on any pretext, interfere in these differences, but shall lend forcible aid to the consuls, when they may ask it, to arrest and imprison all persons composing the crew whom they may deem it necessary to confine. Those persons shall be arrested at the sole request of the consuls, addressed in writing to the local authority, and supported by an official extract from the register of the ship or the list of the crew, and shall be held, during the whole time of their stay in the port, at the disposal of the consuls. Their release shall be granted at the mere request of the consuls made in writing. The expenses of the arrest and detention of those persons shall be paid by the consuls.

State which he represents in his official character. It has long been held that power may be conferred upon a state officer, as such, to execute a duty imposed under an act of Congress, and the officer may execute the same, unless its execution is prohibited by the constitution or legislation of the State. *Prigg* v. *Pennsylvania,* 16 Pet. 539, 622; *Robertson* v. *Baldwin,* 165 U. S. 275. As to the objection that there was any statute or any constitutional provision of the State, prohibiting the execution of the power conferred by the treaty upon the state officer, we think it unfounded. We find nothing in the constitution or in the statutes of California which forbids or would prevent the execution of the power by a state officer, in case he were willing to execute it. The provisions in the constitution of the State, cited by counsel for defendant, relate in substance only to the general proposition that no person should be deprived of his liberty without due process of law. The execution of a treaty between the United States and a foreign government, such as the one in question, would not violate any provision of the California constitution; the imprisonment is not pursuant to a conviction of crime but is simply a temporary detention of a sailor, whose contract of service is an exceptional one, *Robertson* v. *Baldwin, supra,* for the purpose of securing his person during the time and under the circumstances provided for in the treaty, as concerning the internal order and discipline of the vessel. The murder on a foreign vessel, while in one of the ports of this country, of one of the crew of such vessel by another member of that crew has been held not to come within the terms of a somewhat similar treaty with Belgium, because the crime charged concerned more than the internal order or discipline of the foreign vessel. *Wildenhus's case,* 120 U. S. 1.

The chief of police voluntarily performed the request of the consul as contained in the written requisition, and the arrest was, therefore, not illegal so far as this ground is concerned.

There is another difficulty, however, and that is founded upon the provisions of the statutes of the United States. By

the act of Congress, approved June 11, 1864, 13 Stat. 121, entitled "An act to provide for the execution of treaties between the United States and foreign nations respecting consular jurisdiction over the crews of vessels of such foreign nations in the waters and ports of the United States," full provision was made for the execution of such treaties. It was therein provided (section second) that application for the arrest might be made "to any court of record of the United States, or any judge thereof, or to any commissioner appointed under the laws of the United States." The act then provided for the issuing of a warrant for the arrest of the individual complained of, directed to the marshal of the United States, and requiring him to arrest the individual and bring him before the court or person issuing the warrant, for examination, and if, on such examination, it appeared that the matter complained of concerned only the internal order or discipline of the foreign ship, the court should then issue a warrant committing such person to prison, etc. It was further provided that no person should be detained more than two months after his arrest, but at the end of that time he should be allowed to depart and should not again be arrested for the same cause. The act was carried forward, in substance, into the Revised Statutes of the United States as sections 4079, 4080, 4081. See also 2 Comp. Stat. page 2776. This statute having been passed by the United States for the purpose of executing the treaties it had entered into with foreign governments, must be regarded as the only means proper to be adopted for that purpose. Consequently, the requisition of the consul general should have been presented to the District Court or judge, etc., pursuant to the act of Congress, and the arrest should have been made by the marshal as therein provided for. Therefore the arrest of the seaman by the chief of police was unauthorized. When, however, the defendant was brought before the District Court of the United States upon the writ of *habeas corpus*, that court being mentioned in the statute as one of the authorities to issue warrants for the arrest of the

individual complained of, and having power under the statute to examine into the question and to commit the person thus arrested to prison according to the provisions of the act, it would have been the duty of the court, under such circumstances, upon the production of the defendant under the writ, and upon the request of the consul, to have made an examination, and to have committed the defendant to prison if he were found to come under the terms of the treaty. It was, therefore, but a formal objection to the regularity of the arrest, which would have been obviated by the action of the court in examining into the case, and the defendant would not have been entitled to discharge merely because the person executing the warrant was not authorized so to do.

The important question remains as to the true construction of the eighth article of the treaty, with reference to the limitation of the imprisonment of the person coming within its terms. The District Court has held that the imprisonment must end with the departure of the vessel from the port at which the seaman was taken from the vessel. This we regard as an erroneous construction of the terms of the article.

The provisions of that article seem to us plain, and they refer to the imprisonment of the seaman and his detention during the time of his stay in port, and the language does not refer in that respect to the stay of the ship in port. The treaty provides that the local authorities shall lend forcible aid to the consuls when they may ask for the arrest and imprisonment of persons composing the crew, whom they may deem it necessary to confine. The language has no reference whatever to the ship, and they (the persons arrested) are held during their stay in the port "at the disposal of the consul." Surely the ship is not held at the disposal of the consul. It is the persons arrested who are held, and they are to be released at the mere request of the consul, made in writing, and the expenses of the arrest and detention of the persons arrested are to be paid by the consul. From the language of the treaty the departure of the ship from the port need have no effect

whatever upon the imprisonment of the persons arrested. The statute (sec. 4081 of the Rev. Stat.) provides that the imprisonment shall in no case last longer than two months, and at the end of that time the person arrested is to be set at liberty, and shall not again be arrested for the same cause. The statute makes no reference to the stay of the vessel in port, and the legislative construction of the treaty is that the imprisonment is not limited by the departure of the ship. Therefore the statute provides that such imprisonment shall not last, in any event, longer than two months. That term might end while the vessel was still in port. This construction not only carries out the plain language of the treaty, but, it seems to us, it is its reasonable interpretation. A vessel may arrive in port with a mutinous sailor, whose arrest is asked for under the treaty. When imprisoned pursuant to the terms of the treaty he ought not to be discharged without the request of the consul while within the limit of the term of imprisonment provided by the statute, simply because the vessel from which he was taken has left the port. If that were so the result would be either that the sailor would be discharged as soon as the ship left the port, or, in order to prevent such discharge, he would be taken on board the ship again, and probably be placed in irons. The ship might then continue a voyage which would not bring it back to France for months. During this time the sailor might be kept in irons and in close confinement on board ship, or else the discipline and safety of the ship might be placed in peril. By the other construction, although the ship had left the port without the mutinous sailor, he would not be entitled to his discharge from imprisonment within the two months provided for by the statute, and this would give an opportunity to the consul to send the sailor back to France at the earliest opportunity and at the expense of the French Government, by a vessel which was going directly to that country.

The District Court erred in discharging the defendant before the expiration of the two months provided for in the act of

Congress, and against the protest of the French consul. Less than one of the two months of imprisonment permitted by the statute had expired when the defendant was discharged. The order discharging him must be reversed and the defendant remanded to imprisonment in a prison where prisoners under sentence of a court of the United States may be lawfully committed, Rev. Stat. § 4081, subject to the jurisdiction of the French consular authority of the port of San Francisco, but such imprisonment must not exceed, when taken with the former imprisonment of the defendant, the term of two months in the aggregate.

*Reversed, and remanded for further proceedings consistent with this opinion.*

MR. JUSTICE HARLAN dissented.