[Civ. No. 2241.   Third Appellate District.—January 5, 1921.]

# E. B. HARRIS, Petitioner, v. THE SUPERIOR COURT OF SACRAMENTO COUNTY et al., Respondents.

[1] PEACE OFFICERS — ENFORCEMENT OF FEDERAL STATUTE BY. — The federal government may by statute avail itself, to a limited extent, where necessary, of the executive functions of state officers to assist in enforcing valid federal statutes enacted under the constitution to promote the public welfare.

[2] ID. — VIOLATION OF NATIONAL PROHIBITION LAW — ISSUANCE OF WARRANT TO CITY POLICE OFFICER.—Under section 1014 of the Revised Statutes of the United States a valid warrant may be issued, directed to a city police officer, to make an arrest for a violation of the national prohibition law.

[3] ID.—AGREEMENT TO FOREGO OFFICIAL ACTION—BRIBERY.—Where an officer of the law becomes directly or indirectly vested with power to take or not to take some official action, he is guilty of bribery if he corruptly offers for a reward to forego official action.

[4] ID.—SALE OF INTOXICATING LIQUOR—AGREEMENT TO RECEIVE BRIBE —PROSECUTION IN STATE COURT.—A police officer who agrees to receive a bribe, in consideration of which he promises not to arrest a certain person in the event that person should engage in the sale of intoxicating liquor in violation of the national prohibition law, may be prosecuted in the superior court of this state for a violation of section 68 of the Penal Code.

[5] ID.—ENFORCEMENT OF NATIONAL PROHIBITION LAW — ACCEPTANCE OF BRIBE BY CITY POLICE OFFICER—VALIDITY OF STATE STATUTE— JURISDICTION OF STATE COURT.—To the extent that section 68 of the Penal Code, against bribery, regulates the duties of all persons who act under the law and prescribes penalties for the violation of such duties, it is a valid statute, assuming concurrent jurisdiction by the state in the enforcement of the national prohibition law, giving our state court jurisdiction to try a city police officer charged with bribery in agreeing not to arrest for a violation of the national prohibition law.

[6] PROHIBITION—WHEN WRIT AVAILABLE.—The remedy of prohibition is available only in a case of excess of jurisdiction.   (Opinion of supreme court on denial of hearing.)

[7] ID.—AGREEMENT TO RECEIVE BRIBE—SUFFICIENCY OF INDICTMENT— JURISDICTION OF STATE COURT.—Where an indictment clearly at-

3.   Bribery and solicitation of bribes, note, 116 Am. St. Rep. 38.

6.   When remedy of prohibition is available, notes, 12 Am. Dec. 604; 18 Am. Dec. 238; 111 Am. St. Rep. 929; Ann. Cas. 1913D, 595.

tempts to charge the offense on the part of an executive officer of agreement to receive a bribe, a crime defined by section 68 of the Penal Code, it is for the superior court, in the exercise of its jurisdiction and subject to review on appeal from the judgment, to determine as to the sufficiency of the facts stated to show such crime; and an alleged defect in such indictment is not available as a ground for prohibiting the superior court from proceeding with the trial of the cause.   (Opinion of supreme court on denial of hearing.)

PROCEEDING on Prohibition to restrain the Superior Court of Sacramento County, and Malcolm C. Glenn, Judge thereof, from proceeding with the trial of petitioner upon an indictment charging bribery.   Writ discharged.

The facts are stated in the opinion of the court.

Downey & Downey for Petitioner.

Hugh B. Bradford, District Attorney, for Respondents.

BUCK, P. J., *pro tem.*—This is an application for writ of prohibition to restrain the superior court of Sacramento County from proceeding with the trial of petitioner upon indictment charging that petitioner, while serving as a police officer of the city of Sacramento, agreed to receive a bribe, in consideration of which he promised not to arrest one Argante in the event said Argante should engage in the sale of intoxicating liquor in violation of the national prohibition law.

Petitioner claims that the indictment fails to state facts sufficient to constitute a public offense, for the reason that it fails to appear therefrom that petitioner, as a policeman, had any official authority to make an arrest for any violation of the national prohibition law.   And, as stated by petitioner in his brief, "the sole issue for decision, therefore, is whether petitioner was acting in his official capacity as a Sacramento policeman when he is alleged to have agreed not to arrest one Argante should he engage in the sale of intoxicating liquor in violation of the national prohibition law."

Section 68 of the Penal Code provides that, "Every executive officer . . . who asks, receives, or agrees to receive any bribe, upon any agreement or understanding that

his vote, opinion, or action upon any matter then pending, or which may be brought before him in his official capacity, shall be influenced thereby, is punishable by imprisonment in the state prison not less than one nor more than fourteen years," etc.

In construing this section, our supreme court, in the case of *People* v. *Markham*, 64 Cal. 157, [49 Am. Rep. 700, 30 Pac. 620], which was a case wherein was involved the prosecution of a police officer for promising to accept a bribe upon an agreement that he would not arrest persons engaged in violating a certain gaming ordinance, used the following language: "The scope of the definition of bribery is as broad as the duties of the officer who accepts the bribe. It is the duty of a police officer to arrest, with or without warrant, according to circumstances, every person who violates section 330 of the Penal Code. If, therefore, he agreed, in consideration of money paid him, not to arrest any person who should violate section 330, it would seem to the ordinary comprehension that he was bribed with respect to a matter which might be a subject of his official action."

And, quoting with approval from an Alabama case (*Barefield* v. *State*, 14 Ala. 603), the opinion continues: "The matter, cause, or proceeding must be one which may come before him, that is, comes within his jurisdiction, or which may be brought before the officer, or which may be pending at the time of the corrupt promise. The legislature, I think, did not intend that the prosecution should depend upon the fact whether the officer actually had it in his power to carry out the corrupt agreement before the indictment was exhibited. It is sufficient, I think, that the subject matter upon which the bribe was to operate existed, and could legally be brought before the officer in his official capacity. The offense consists, in contemplation of the statute, in poisoning and corrupting the fountain of justice, and although the particular deleterious consequence designed to be effected by the parties has not ensued, the state, nevertheless, has an officer corrupted, and society has lost all protection for its rights, so far as the administration of the law by him is concerned."

The national prohibition law (41 Stat. 305) has been held to be constitutional. It was enacted by Congress to

51 Cal. App.—2

give force and effect to the eighteenth amendment to the constitution of the United States, which provides that: "After one year from the ratification of this article, the manufacture, sale or transportation of intoxicating liquors within, the importation thereof into, or the exportation thereof from, the United States and all territory subject to the jurisdiction thereof, for beverage purposes is hereby prohibited." And provides further that, "The Congress and the several states shall have concurrent power to enforce this article by appropriate legislation." And section 2 of title II of the enforcing act provides that:

"Sec. 2. The commissioner of internal revenue, his assistants, agents, and inspectors shall investigate and report violations of this act to the United States attorney for the district in which committed, who is hereby charged with the duty of prosecuting the offenders, subject to the direction of the attorney general, as in the case of other offenses against the laws of the United States, and such commissioner of internal revenue, his assistants, agents, commissioners or other officers or courts authorized to issue the same for the apprehension of such offenders, and may, subject to the control of the said United States attorney, conduct the prosecution at the committing trial for the purpose of having the offenders held for the action of the grand jury. Section 1014 of the Revised Statutes of the United States is hereby made applicable in the enforcement of this act. Officers mentioned in said section 1014 are authorized to issue search-warrants under the limitations provided in title XI of the act approved June 15, 1917 (40 Stats. at Large, p. 217)."

And section 1014 of the Revised Statutes, being also section 1674, United States Compiled Statutes, Annotated, provides as follows: "For any crime or offense against the United States, the offender may, by any justice or judge of the United States, or by any commissioner of a circuit court to take bail, or by any chancellor, judge of a supreme or superior court, chief or first judge of common pleas, mayor of a city, justice of the peace, or other magistrate, of any state where he may be found, and agreeably to the usual mode of process against offenders in such state, and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before

such court of the United States as by law has cognizance of the offense. Copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizance of the witnesses for their appearance to testify in the case. And where any offender or witness is committed in any district other than that where the offense is to be tried, it shall be the duty of the judge of the district where such offender or witness is imprisoned, seasonably to issue, and of the marshal to execute, a warrant for his removal to the district where the trial is to be had.''

From the foregoing it is plain that the national prohibition law expressly provides that offenders thereof may be arrested by a justice of the peace or other magistrate of any state where he may be found, agreeably to the usual mode of process against offenders in such state. Under the usual mode of procedure in this state (Pen. Code, secs. 811–818, and secs. 834–838), an arrest by a justice of the peace or other magistrate is accomplished by the issuance of a warrant directed to a peace officer, such as a "sheriff of a county, or a constable, marshal or policeman of a township, city or town," whose official duty it thereupon becomes to execute such warrant by subjecting the party named therein to such restraint as is "necessary for his arrest and detention." It is true that the federal statute does not by name mention policemen, but the statute does mention the official source from which the policeman derives his official authority to act. And it has accordingly been held that a person cannot escape the pains and penalties of bribery by reason of the mere fact that his authority to act in the premises is not specifically conferred upon him by statute.

As stated by the supreme court of the United States in the case of *United States* v. *Birdsall,* 233 U. S., at page 230, [58 L. Ed. 930, 34 Sup. Ct. Rep. 514, see, also, Rose's U. S. Notes] : "Every action that is within the range of official duty comes within the purview of these sections. There was thus a legislative basis (*United States* v. *George,* 228 U. S. 14, 22, [57 L. Ed. 712, 715, 33 Sup. Ct. Rep. 412, see, also, Rose's U. S. Notes]) for the charge in the present cases, if the action sought to be influenced was official action. To constitute it official action, it was not

necessary that it should be prescribed by statute; it was sufficient that it was governed by a lawful requirement of the department under whose authority the officer was acting, (Rev. Stats., sec. 161 (U. S. Comp. Stats. 1901, p. 80); *Benson* v. *Henkel*, 198 U. S. 1, 12, [49 L. Ed. 919, 922, 25 Sup. Ct. Rep. 569]; *Haas* v. *Henkel*, 216 U. S. 462, 480, [17 Ann. Cas. 1112, 54 L. Ed. 569, 577, 30 Sup. Ct. Rep. 249, see, also, Rose's U. S. Notes].) Nor was it necessary that the requirement should be prescribed by a written rule or regulation. It might also be found in an established usage which constituted the common law of the department and fixed the duties of those engaged in its activities. (*United States* v. *Macdaniel*, 7 Pet. (U. S.) 1, 14, [8 L. Ed. 587, 592, see, also, Rose's U. S. Notes].) In numerous instances, duties not completely defined by written rules are clearly established by settled practice, and action taken in the course of their performance must be regarded as within the provisions of the above-mentioned statutes against bribery. (*Haas* v. *Henkel, supra.*)''

Also, in the case of *Krichman* v. *United States,* 263 Fed. 538, at page 542, the court uses the following language:

''But in the case at bar, in order to sustain the indictment under which the defendant has been convicted, it is not necessary to hold, and we do not hold, that the defendant at the time the offense charged was committed was an officer of the United States. We do not think he was. But we do hold that he was acting on behalf of the United States in an official function, a function belonging to his superior, the director-general of railroads, and committed to him for the purpose of being executed.

''Any employee in any department of the government of the United States, who acts in the performance of a duty which is imposed upon that department, or aids in any way in the performance of such a duty, is acting on behalf of the United States in an official function and within the range of official duty, within the meaning of section 39 of the Criminal Code. The words of the section are not to be narrowed to the exclusion of what the Congress intended to embrace. That intention is not to be defeated by an overstrict construction. The rule that

a penal law is to be construed strictly 'comes attended,' said the court in *United States* v. *Hartwell, supra* (6 Wall. (U. S.) 385, [18 L. Ed. 830, see, also, Rose's U. S. Notes]), 'with qualifications and other rules no less important. . . . The rule does not exclude the application of common sense to the terms made use of in the act in order to avoid an absurdity, which the legislature ought not to be presumed to have intended.' "     (See, also, *Sears* v. *United States,* 257 Fed., at page 261.)

And furthermore, if the federal statute section (sec. 1014, Rev. Stats.) is operative herein, it is begging the question to suggest that the warrant could not issue because the offense is not triable in the county as required by section 811 of our Penal Code. For the power to issue the warrant in this instance comes, not from the state statute, but comes, if at all, from the federal law. Likewise, as regards the suggestion that the city charter of Sacramento forbids its policemen to follow any other profession, but requires that they devote their entire time to the performance of their official duty.

Now, as regards the power vested by the federal statutes in the magistrate to issue the warrant as a part of the usual mode of process to consummate an arrest: From the beginning of our history, in order to give effect to federal statutes, which are the supreme law of the land, and passed under the constitution to promote the general welfare, use has been always made of the administrative agencies of the several states—sometimes with and sometimes without the express consent of the states. This has been the practice as regards the naturalization of aliens, though in an ante bellum case our supreme court, as then constituted, held that Congress had no power to confer jurisdiction upon the courts of a state to naturalize aliens, although, if such power be recognized by the legislature of a state, it may be exercised by the courts of such state of competent jurisdiction. (*Ex parte Knowles,* 5 Cal. 300.)     But it is now held that "whatever may have been the theory of some courts regarding the power of Congress to confer such authority upon the state courts in the past, the question is now settled that Congress has such power, and that state courts may constitutionally exercise the same when authorized by Congress to do so,

without legislative authority from the states which created them, provided the exercise of such jurisdiction is not prohibited by state legislation." (2 Corpus Juris, p. 118; *Levin* v. *United States*, 128 Fed. 826, [63 C. C. A. 476]; *Holmgren* v. *United States*, 217 U. S. 509, [19 Ann. Cas. 778, 54 L. Ed. 861, 30 Sup. Ct. Rep. 588, see, also, Rose's U. S. Notes].)

In the above case, at 217 U. S., page 517, [19 Ann. Cas. 778, 54 L. Ed. 861, 30 Sup. Ct. Rep. 589], the court uses the following language: "Unless prohibited by state legislation, state courts and magistrates may exercise the powers conferred by Congress under such laws. (*Stephens, Petitioner,* 4 Gray (Mass.), 559.)" (See, also, *State* v. *Superior Court*, 75 Wash. 239, [134 Pac. 916]; also reported in Ann. Cas. 1915C, 452, with notes.)

Likewise, in giving effect to its power to regulate commerce with foreign nations and among the states, Congress has, without question of its right and duty so to do, availed itself of the administrative facilities of the several states.

Section 4598 of the Revised Statutes provides as follows: "Sec. 4598. If any seaman who shall have signed a contract to perform a voyage shall, at any port or place, desert, or shall absent himself from such vessel, without leave of the master, or officer commanding in the absence of the master, it shall be lawful for any justice of the peace within the United States, upon the complaint of the master, to issue his warrant to apprehend such deserter, and bring him before such justice."

And, also, section 4599 authorizes the apprehension of deserting seamen, with or without the assistance of the local public officers or constables, and without a warrant, and their conveyance before any court of justice or magistrate of the state to be dealt with according to law.

In the case of *Robertson* v. *Baldwin*, 165 U. S. 275, [41 L. Ed. 715, 17 Sup. Ct. Rep. 326, see, also, Rose's U. S. Notes], construing these sections it was contended that "Congress has no authority under the constitution to vest the foregoing power of arrest in the courts or judicial officers of the several states." But after a review of the development of the national law in that respect, the court held "that Congress is still at liberty to authorize the judicial

officers of the several states to exercise such power as is ordinarily given to officers of courts not of record; such, for instance, as the power to take affidavits, to arrest and commit for trial offenders against the laws of the United States, to naturalize aliens, and to perform such other duties as may be regarded as incidental to the judicial power rather than a part of the judicial power itself. . . .

"We think the power of justices of the peace to arrest deserting seamen and deliver them on board their vessel is not within the definition of the 'judicial power' as defined by the constitution, and may be lawfully conferred upon state officers. That the authority is a most convenient one to entrust to such officers cannot be denied, as seamen frequently leave their vessels in small places, where there are no federal judicial officers, and where a justice of the peace may usually be found, with authority to issue warrants under the state laws." (See, also, *Dallemagne* v. *Moisan,* 197 U. S. 169, [49 L. Ed. 709, 25 Sup. Ct. Rep. 422, see, also, Rose's U. S. Notes].)

Likewise, in regard to bankruptcy proceedings, Congress, in order to give effect to its statute, made provision for punishment for perjury, and provided for the arrest of offenders under the provisions of section 1014 above cited. And accordingly, in the case of *McIntosh* v. *Bullard et al.,* 95 Ark. 227, at page 230, [129 S. W. 85, at page 87], the court uses the following language: "But, notwithstanding the justice of the peace had no jurisdiction as a state official to entertain proceedings for a prosecution for this offense under the laws of the state of Arkansas, nevertheless, as an agency and officer designated by the laws of the United States, he did have authority and jurisdiction to arrest and imprison or bail for trial any offender against the laws of the United States. It is provided by enactment of Congress (U. S. Comp. Stats. 1901, p. 716, sec. 1014) that 'for any crime or offense against the United States, the offender may by any . . . justice of the peace . . . be arrested and imprisoned or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of such offense.' The justice of the peace was designated by Congress as an official upon whom it conferred the authority to issue the warrant for and to bind over the person charged with perjury committed against the laws of the United

States. The justice of the peace had, therefore, the jurisdiction to perform this function; and the warrant issued by him was not illegal and void. (*Thomas* v. *Loney,* 134 U. S. 372, [33 L. Ed. 949, 10 Sup. Ct. Rep. 384, see, also, Rose's U. S. Notes].)''

Likewise Congress, in legislating in regard to territories, has availed itself. of the above section 1014. And in the case of *Roberts* v. *Brown,* 43 Tex. Civ. 206, [94 S. W. 388], which was an action to recover damages for false imprisonment and arrest in Texas for a crime alleged to have been committed by plaintiff in Indian Territory, when the arrest was made under the provisions of the above section 1014. The court, after quoting the section in full, states as follows: ''Under these statutes, the justice of the peace of precinct No. One in Clay County was empowered, upon the complaint of appellee Brown, to issue a warrant for the arrest of appellant agreeably to the usual mode of process of this state, and appellee Brown was authorized, and it was his duty, upon receiving such warrant, to arrest appellant and to take him before the nearest circuit court commissioner or the nearest judicial officer having jurisdiction for a hearing, commitment, or taking of bail for trial.''

Petitioner relies upon, and incorporates in his brief, an opinion rendered last August by the learned attorney-general of the state of Maryland, holding ''that the police of Baltimore City do not, at this time, by virtue of their official position, possess the power to make legal arrests for violations of the Volstead Act, or validity to execute federal processes issued by virtue of its provisions.'' As a basis for this opinion, it is stated therein that ''since the federal system has no common-law jurisdiction from which an implied authority might be derived, and since no express power has, by any act of Congress, been conferred upon state officials in connection with the enforcement of the Volstead Act, I have come to the conclusion that from the standpoint of federal authorization, the police of Baltimore are totally lacking in authority to enforce that measure.'' And the opinion disposes of the authority to arrest given by section 2 of the act as follows: ''And in section 2 it is declared that section 1014 of the Revised Statutes of the United States is made applicable in the enforcement of this act. Section 1014, however, although referring to a number of state

officials, and authorizing them to arrest and imprison any-
one guilty of misdemeanor or offense against the United
States, makes no reference whatever to policemen or similar
officers.''

And, continuing, the opinion states: ''The inference natu-
rally is that no authority, whatever, to arrest or issue the
warrant was possessed by the magistrate, except that ex-
pressly conferred by the act itself.'' And the opinion also
states: ''In *Dallemagne* v. *Moisan,* 197 U. S. 169, [49 L. Ed.
709, 25 Sup. Ct. Rep. 422, see, also, Rose's U. S. Notes],
an arrest by the chief of police of San Francisco was held to
be illegal because the act of Congress did not include that
official among the parties authorized to make that particular
kind of arrest.''

An analysis of the case cited by the attorney-general
would seem to indicate that the statute referred to has been
accorded by the supreme court of the United States a much
broader and less sectional construction than that given to it
by the learned attorney-general of the state of Maryland.
In the case cited the court states: ''The proceeding arises
on *habeas corpus,* to inquire into the validity of the deten-
tion of defendant in the city prison of San Francisco, in
the state of California. His application for the writ was
addressed to the district court of the United States for the
northern district of California, and it showed that he was
a citizen of France and was imprisoned by virtue of a requi-
sition in writing, signed by the French consul-general re-
siding in San Francisco, and addressed to the chief of police
of San Francisco, California, requiring his arrest as one of
the crew of the French ship 'Jacques,' then in that port,
on account of his insubordinate conduct as one of such crew.
(The requisition contained all the averments of facts which
would warrant the arrest of the petitioner under the provi-
sions of the treaty of 1853 between the United States and
France.) The petitioner also averred that at the time of
the making of his application for the writ the ship was not
in the port of San Francisco, but had departed therefrom
some time before. The petitioner was arrested by the chief
of police, under such requisition, on the first day of May,
1903, and since that time had been confined in the city
prison of San Francisco.''

The arrest in question was made in pursuance of the provisions of the eighth article of the consular convention between the United States and France, which provided as follows: "The respective consuls-general, consuls, vice-consuls, or consular agents, shall have exclusive charge of the internal order of the merchant vessels of their nation, and shall alone take cognizance of differences which may arise, either at sea or in port, between the captain, officers, and crew, without exception, particularly in reference to the adjustment of wages and the execution of contracts. The local authorities shall not, on any pretext, interfere in these differences, but shall lend forcible aid to the consuls, when they ask it, to arrest and imprison all persons composing the crew whom they may deem it necessary to confine. Those persons shall be arrested at the sole request of the consuls, addressed in writing to the local authority, and supported by an official extract from the register of the ship or the list of the crew, and shall be held, during the whole time of their stay in the port, at the disposal of the consuls."

In construing the treaty in its relation to the state of California, the court uses the following language: "The first objection made by the defendant is to the validity of the requisition of the consul-general, because it was directed to the chief of police of San Francisco, he being officer of the state as distinguished from a federal officer, the defendant contending that a federal treaty cannot impose on a state officer, as such, a function violating the constitution of the state which he represents in his official character. It has long been held that power may be conferred upon a state officer, as such, to execute a duty imposed under an act of Congress, and the officer may execute the same, unless its execution is prohibited by the constitution or legislation of the state. (*Prigg* v. *Pennsylvania,* 16 Pet. (U. S.) 539, 622, [10 L. Ed. 1060]; *Robertson* v. *Baldwin,* 165 U. S. 275, [41 L. Ed. 715, 17 Sup. Ct. Rep. 326, see, also, Rose's U. S. Notes].) As to the objection that there was any statute or any constitutional provision of the state prohibiting the execution of the power conferred by the treaty upon the state officer, we think it unfounded. We find nothing in the constitution or in the statutes of California which forbids or would prevent the execution of the power by a state offi-

cer, in case he were willing to execute it. The provisions in the constitution of the state, cited by counsel for defendant, relate in substance only to the general proposition that no person should be deprived of his liberty without due process of law. The execution of a treaty between the United States and a foreign government, such as the one in question, would not violate any provision of the California constitution; the imprisonment is not pursuant to a conviction of crime but is simply a temporary detention of a sailor, whose contract of service is an exceptional one (*Robertson* v. *Baldwin, supra*), for the purpose of securing his person during the time and under the circumstances provided for in the treaty, as concerning the internal order and discipline of the vessel. . . .

"The chief of police voluntarily performed the request of the consul as contained in the written requisition, and the arrest was, therefore, not illegal, so far as this ground is concerned."

The court, however, does hold that the foregoing section should be construed in connection with "the act of Congress approved June 11, 1864, 13 Stat. 121," [U. S. Comp. Stats., secs. 7629–7631], which "provided for the issuing of a warrant for the arrest of the individual complained of, directed to the marshal of the United States, and requiring him to arrest the individual and bring him before the court or person issuing the warrant, for examination; and if, on such examination, it appeared that the matter complained of concerned only the internal order or discipline of the foreign ship, the court should then issue a warrant committing such person to prison, etc." And the court accordingly held that "This statute having been passed by the United States for the purpose of executing the treaties it had entered into with foreign governments, must be regarded as the only means proper to be adopted for that purpose. Consequently, the requisition of the consul-general should have been presented to the district court or judge, etc., pursuant to the act of Congress, and the arrest should have been made by the marshal as therein provided for. Therefore the arrest of the seaman by the chief of police was unauthorized." It would, therefore, from the foregoing appear that the arrest by the chief of police of San Francisco was held to be illegal not, as stated by the attorney-general, "because the act of Con-

gress did not include that official among the parties authorized to make that particular kind of arrest," but because the act explicitly required that the "warrant for the arrest should be directed to the marshal of the United States," requiring *him* to arrest the individual. And the case further does hold, affirming *Robertson* v. *Baldwin, supra,* that "there is sufficient comity between the federal and state government to render an arrest by a state officer valid, when such state officer acts in pursuance of an authorization conferred by a federal statute, if there is "nothing in the constitution or the statutes of California which forbids or would prevent the execution of the power by a state officer, in case he were willing to execute it."

The case of *John Bad Elk* v. *United States,* 177 U. S. 529, [44 L. Ed. 874, 20 Sup. Ct. Rep. 729, see, also, Rose's U. S. Notes], also cited by the attorney-general, involves simply the right of a policeman to arrest without a warrant a person charged with the commission of crime on an Indian reservation. In that case it was held that "by section 1014 of the Revised Statutes, the officers of the United States named therein, and certain state officers, may, agreeably to the usual mode of process against offenders in such state, order the arrest of an offender for any crime or offense committed against the United States. This section has no application. Referring to the laws of South Dakota, we find no authority for making such an arrest without warrant."

And the case of *Kurtz* v. *Moffitt,* 115 U. S. 487, [29 L. Ed. 458, 6 Sup. Ct. Rep. 148, see, also, Rose's U. S. Notes], holds simply that (quoting the syllabus) "a police officer of a state, or a private citizen, has no authority as such, without any warrant or military order, to arrest and detain a deserter from the army of the United States."

It does not appear that section 1014 was incorporated in the act pertaining to deserters from the army, as it has been incorporated in the Volstead Act. And the court in its opinion expressly held that "section 1014 of the Revised Statutes [quoting at length] manifestly applies to proceedings before the civil courts alone," as distinguished from military courts, and the opinion of the court contains the following pregnant language: "Sections 836, 837, 849 of the Penal Code of California of 1872, affirming the authority of a peace officer, without a warrant, or a private person, to

make an arrest 'for a public offense committed or attempted in his presence,' as well as in cases of felony, and requiring the person to be taken forthwith before a magistrate, evidently have in view civil offenses only, and if they could be construed to include such offenses against the United States, certainly do not include offenses which are not triable and punishable except by court-martial.''

[1] Irrespective of the reasoning by which it has been arrived at, but, nevertheless, based upon a progressive spirit of state and federal comity, and a developed nationality as opposed to mere sectionalism, the rule seems to be well established in our country that the federal government may by statute avail itself, to a limited extent, where necessary, of the executive functions of state officers to assist in enforcing valid federal statutes enacted under the constitution to promote the public welfare.

[2] It would therefore appear that the petitioner has not brought himself within the reason of the rule which holds that the ''crime of bribery cannot be predicated upon the offer of a reward not to perform duties for the performance of which there is no legal or constitutional warrant.'' (*United States* v. *Boyer,* 85 Fed. 425.)    There was, and is, under the rule sufficient potency in the federal statute (section 1014, Revised Statutes) to permit the issuance of a valid warrant, directed to the petitioner, to arrest Argante for the violation of the national prohibition law.    [3] And in the event such a warrant under the foregoing authority should be issued, petitioner would then be brought within the rule that where an officer of the law becomes directly or indirectly vested with power to take or not to take some official action, he is guilty of bribery if he corruptly offers for a reward to forego official action.    (*People* v. *Jackson,* 191 N. Y. 293, [14 Ann. Cas. 243, 15 L. R. A. (N. S.) 1173, 84 N. E. 65]; *State* v. *Lehman,* 182 Mo. 424, [103 Am. St. Rep. 670, 66 L. R. A. 490, 81 S. W. 1118]; *State* v. *Potts,* 78 Iowa, 656, [5 L. R. A. 814, 43 N. W. 534]; *People* v. *Bunkers,* 2 Cal. App. 197, [84 Pac. 364, 370]; *State* v. *Ellis,* 33 N. J. L. 102, [97 Am. Dec. 707].)

[4] Petitioner also contends that ''he is acting solely under the laws of the United States, and it is axiomatic that where crime is committed in the execution of the laws of the United States, prosecution must be had in the courts of

the United States—the offense is one against the United States, and not against the state." And in this connection he cites *Thomas* v. *Loney,* 134 U. S. 372, [33 L. Ed. 949, 10 Sup. Ct. Rep. 584, see, also, Rose's U. S. Notes], and *People* v. *Kelly,* 38 Cal. 145, [99 Am. Dec. 560].

Each of these cases was a prosecution for perjury committed by a witness before a federal tribunal. In each case it was held that the state court was without jurisdiction to try the offense, for the reason that the defendant, being a witness under federal jurisdiction, and owing no duty to the state in the premises, could not at the same time be delinquent in the performance of any duty which he owed the state. But in the case at bar the petitioner exercised his authority to execute the warrant of arrest by virtue of the official position which he holds under the laws of the state. He at no time ceased to be a public officer of the state, and his capacity to speed the enforcement of the federal statute by executing the warrant issued thereunder by the designated magistrate was based upon the faithful performance by him of his sworn duty to the state. It would therefore be in derogation of its authority for the state of California to forego jurisdiction to punish its own official for an offense denounced by its own statute. In this instance the offense strikes directly at the integrity of the state. (2 Wharton on Criminal Law, sec. 1275, and *State* v. *Whittemore,* 50 N. H. 245, [9 Am. Rep. 196]; *Rump* v. *Commonwealth,* 30 Pa. St. 475.)

[5] Also it should be borne in mind that by the constitutional amendment XVIII itself, Congress is not given exclusive jurisdiction in the enforcement of the act. And, therefore, to the extent that our penal statute against bribery regulates "the duties of all persons who acted under the law," and goes "to prescribe penalties for the violation of such duties" (*People* v. *Markham,* 64 Cal. 157, [49 Am. Rep. 700, 30 Pac. 620]), our penal statute is a valid statute, assuming concurrent jurisdiction by the state in the enforcement of the national prohibition law. And this gives our own court jurisdiction to try the petitioner. (*Commonwealth* v. *Nickerson,* 236 Mass. 281, [128 N. E. 273].)

The writ will therefore be discharged.

Burnett, J., and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 3, 1921, and the following opinion then rendered thereon:

THE COURT.—The petition for a hearing in this court after decision by the district court of appeal of the third appellate district is denied, entirely without reference to the question discussed in the opinion of the court and without any intimation of our opinion as to the correctness of the views expressed therein. The judgment of the district court of appeal that a writ of prohibition be denied was correct for the reason that no case for prohibition was made. [6] As was stated in the opinion of Mr. Justice Hart in *Kitts* v. *Superior Court,* 5 Cal. App. 469, [90 Pac. 980], the remedy of prohibition is available only in a case of excess of jurisdiction, "and consequently the principle declared upon a similar point in the case of *Ex parte Ruef* (on *habeas corpus*), 150 Cal. 665, [89 Pac. 605], is pertinent" where the claim is that the indictment or information does not state facts sufficient to constitute a public offense. In the case cited we said: "We think the true rule is that where an indictment purports or attempts to state an offense of a kind of which the court assuming to proceed has jurisdiction, the question whether the facts charged are sufficient to constitute an offense of that kind will not be examined into on *habeas corpus.* Here the indictments clearly attempt to charge extortion, a crime defined by section 518 et seq. of the Penal Code, and within the jurisdiction of the superior court." The rule so declared in the Ruef case has since been uniformly followed by this court. (See, also, *In re Hughes,* 159 Cal. 360, 362, [113 Pac. 684].) It was expressly held to apply in regard to the remedy by prohibition in *Whitney* v. *Superior Court,* 182 Cal. 114, [187 Pac. 12]. [7] In the case at bar the indictment clearly attempted to charge the offense on the part of an executive officer of agreeing to receive a bribe, a crime defined by section 68 of the Penal Code, and it was for the superior court, in the exercise of its jurisdiction and subject to review on appeal from the judgment, to determine as to the sufficiency of the facts stated to show such crime. The alleged defect in the indictment is not available as a ground for prohibit-

ing the superior court from proceeding with the trial of the cause.

The petition for a hearing in this court is denied.

All the Justices concurred.