**Petition of GEORGAKOPOULOS.**

**No. 421 of 1948, Admiralty.**

United States District Court
E. D. Pennsylvania.

Dec. 16, 1948.

Thomas F. Mount and Joseph W. Henderson, both of Philadelphia, Pa., for petitioner.

Philip Dorfman, of Philadelphia, Pa., for respondent.

McGRANERY, District Judge.

Petitioner, representing the Greek Consul, seeks an order compelling four seamen to leave a Greek merchant vessel,

which is now in the Port of Philadelphia. His petition is based upon a treaty between the United States and Greece, 33 Stat. 2122, which provides:

## "Article XII.

"Consuls-general, consuls, vice-consuls and consular agents shall have exclusive charge of the internal order of the merchant vessels of their nation and shall alone take cognizance of differences which may arise either at sea or in port between the captains, officers and crews, without exception, particularly in reference to the adjustment of wages and the execution of contracts..

&ast; &ast; &ast; &ast; &ast; &ast;

"In any other case, said Federal, State or Municipal Authorities or Courts in the United States, or Courts or Authorities in Greece, shall not interfere but shall render forcible aid to consular officers, when they may ask it, to search, arrest and imprison all persons composing the crew, whom they may deem it necessary to confine. Those persons shall be arrested at the sole request of the consuls addressed in writing to either the Federal, State or Municipal Courts or Authorities in the United States, or to any Court or Authority in Greece, and supported by an official extract from the register of the ship or the list of the crew, and the prisoners shall be held, during the whole time of their stay in the port, at the disposal of the consular officers. Their release shall be granted at the mere request of such officers made in writing. The expenses of the arrest and detention of those persons, shall be paid by the consular officers."

The treaty was proclaimed by the President of the United States on July 11, 1903. A prior statute, enacted for the first time in 1864, 13 Stat. 121, and carried over into the Revised Statutes in 1878, § 4079, had set up a procedure for executing this kind of treaty procedure, and provided, in addition, that: "Whenever it is stipulated by treaty or convention between the United States and any foreign nation that the consul general, consuls, vice consuls, or consular or commercial agents of each nation, shall have exclusive jurisdiction of controversies, difficulties, or disorders arising at sea or in the waters or ports of the other nation, between the master or officers and any of the crew, or between any of the crew themselves, of any vessel belonging to the nation represented by such consular officer, such stipulations shall be executed and enforced within the jurisdiction of the United States as in the two following sections declared. But before this section shall take effect as to the vessels of any particular nation having such treaty with the United States, the President shall be satisfied that similar provisions have been made for the execution of such treaty by the other contracting party, and shall issue his proclamation to that effect, declaring this section to be in force as to such nation." 22 U.S.C.A. § 256.

It is conceded that no proclamation of this particular kind has ever been issued under this treaty. Respondent's chief defense, therefore, to the petition is that it seeks to enforce the treaty by means of this statute, while the statute is not yet in effect in respect to Greece. Respondent relies upon The Wind, 22 F.Supp. 883, in which this Court remarked ten years ago that the Norwegian Consul could not enforce a similar treaty provision. However, I do not regard that case as necessarily binding in this action since the language relied upon was dictum. The action before the Court in that case was a possessory libel by the master of the vessel, not a petition by the Consul. Moreover, the views of the State Department upon the matter were apparently not formally brought to the Court's attention as they have been in this action. Of course, the position of the State Department is not controlling upon the courts in matters of this sort, but their viewpoint is entitled to respect and mature consideration. In a letter to the Court which both counsel have agreed should be part of the record, the Department's position is stated, as follows: "The Department has considered the question as to whether any further proclamation is required to give effect to the provisions of Article XII of the consular convention of 1902 with Greece insofar as they remain in force, and is of the view that because of the specific character of

those provisions, with no qualification with respect to subsequent action or any requirement with respect to reciprocity, those provisions of the convention are binding and fully applicable without any further proclamation."

After careful consideration of the matter, I feel that this view is correct. To hold otherwise is to render the treaty worthless, until the Executive arm of the government issues a proclamation which it considers unnecessary. In the case of The Wind, the master of a vessel was prevented from bringing an action to expel sit-down strikers because a treaty gave jurisdiction of these matters to the consul, just as in the instant case. If, in addition, the Consul is not allowed to enforce this jurisdiction under 22 U.S. C.A. § 256 et seq., no remedy is available at all. See Robinson, On Admiralty, 351, fn. 272a. There is undoubtedly ground for requiring, as to treaties on the books when this statute was passed, that another proclamation be forthcoming in accordance with the statute. Cf. Dallemagne v. Moisan, 197 U.S. 169, 25 S.Ct. 422, 49 L.Ed. 709. But where the statutory procedure is already enacted, and a treaty is, at a later date, solemnly signed, ratified, and proclaimed, it does not seem unreasonable to hold that nothing further is required to allow the courts to enforce it. This is not a question of whether or not the treaty abrogates or modifies a prior existing statute (Cf. Cook v. United States, 288 U.S. 102, 53 S.Ct. 305, 77 L.Ed. 641), for it is not impossible for both the treaty and the statute to stand together. See United States v. Lee Yen Tai, 185 U.S. 213, 222, 22 S.Ct. 629, 46 L.Ed. 878. On July 11, 1903, President Theodore Roosevelt issued the Proclamation putting the treaty involved here into effect, in these words:

"And whereas the said Convention, as amended by the Senate of the United States, has been duly ratified on both parts, and the ratifications of the two governments were exchanged in the City of Athens, on the ninth day of July, one thousand nine hundred and three;

"Now, therefore, be it known that I, Theodore Roosevelt, President of the United States of America, have caused the said Convention to be made public, to the end that the same and every article and clause thereof, as amended, may be observed and fulfilled with good faith by the United States and the citizens thereof.

"In testimony whereof, I have hereunto set my hand and caused the seal of the United States of America to be affixed." 33 Stat. 2135.

With the statutory procedure already enacted, it is reasonable, I feel, to regard this Proclamation as satisfying the requirement that " * * * the President shall be satisfied that similar provisions have been made for the execution of such treaty by the other contracting party, and shall issue his proclamation to that effect, declaring this section to be in force as to such nation."

Accordingly, therefore, I shall overrule respondent's exception to the libel on the ground that the treaty provisions cannot yet be enforced under this procedure.

Respondent has advanced other contentions, as well, in support of his exceptions to the petition. Thus, he argues that neither the treaty nor the statute apply where the misconduct of the seamen complained of did not occur upon the vessel to which the order would be directed; that the relevant portions of the treaty have been abrogated; that granting the relief prayed for would contravene the expressed public policy of the United States; that the petition seeks deportation or extradition without conforming to the statutes governing these procedures, and, finally, that A. Georgakopoulos is not a proper party to the proceeding.

As to the first argument, the "discord" which has happened on board is the "unlawful and defiant refusal" of the seamen to leave the vessel. As to the second, it is true that those portions of Article XII which confer exclusive jurisdiction on the Consul over disputes growing out of wage adjustments have been abrogated. See The Leonidas, D.C., 32 F. Supp. 738, 740, reversed on other grounds, 4 Cir., 116 F.2d 440. Therefore, were a controversy over the payment of wages disclosed to be the real issue here, the

Consul's petition under 22 U.S.C.A. § 256 would probably fail, for the reason that the statute only applies to situations where the Consul has "exclusive jurisdiction of controversies, difficulties, or disorders * * *". It may be, of course, that if the seamen actually appear before the Court in accordance with 22 U.S.C.A. § 257, that it will appear that their refusal to leave the ship grows out of a wage dispute. However, at this stage of the proceedings and on respondent's motion, the facts in the petition must be accepted as true, and they do not indicate that such is the case. Therefore, although it is true that parts of Article XII of the treaty have been abrogated (See The Leonidas, supra), the situation presented by these pleadings is nonetheless covered by the treaty. None of respondent's remaining contentions merit extended discussion. I feel that they are not well taken and, accordingly, shall overrule the exceptions to the petition.