## COURT OF APPEALS,

### March 3, 1908.

# THE PEOPLE v. MOSES J. JACKSON.

### (191 N. Y. 293.)

(1). MOTION IN ARREST OF JUDGMENT.

A motion in arrest of judgment can be granted only in two cases: *First,* when the court has no jurisdiction over the subject of the indictment, and *second,* when the facts stated in the indict- ment do not constitute a crime; and, where it is conceded that the court in which the indictment was found and tried has jurisdic- tion of the crime charged, the power to arrest judgment depends upon the sufficiency of the indictment itself.

(2). CORONERS—JUDICIAL OFFICERS WITHIN MEANING OF SECTION 72 OF PENAL CODE—BRIBERY.

A coroner has the power of a magistrate where a person has been killed or dangerously wounded by another, and in such a case he has the authority to issue warrants, hold examinations and com- mit or discharge the accused. He is, therefore, a judicial officer within the meaning of section 72 of the Penal Code which provides that " a judicial officer * * * who asks, receives or agrees to receive a bribe * * * upon any agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding shall be influenced thereby," is guilty of a felony.

(3). BRIBERY—JUDICIAL OFFICERS—ACTUAL JURISDICTION OF OFFICER ACCUSED OF BRIBERY NOT ESSENTIAL.

It is of no consequence, within the purview of the law, whether a judicial officer, when accepting a bribe to do an act apparently within his jurisdiction, actually had jurisdiction or not. The statute against bribery says nothing about jurisdiction, and official action means such as properly belongs to the office and is intended by the officer to be official, and, it is sufficient if the defendant assumed, *colore officii,* to perform a function belonging to his office even if the right to perform it did ot exist in the particular case. Just as an officer *de facto* is punishable for malfeasance in office the same as if he had been an officer *de jure,* so an officer *de jure,* acting apparently with, but really without jurisdiction, is punish- able for accepting a bribe the same as if he had had complete juris- diction, provided the action to be corruptly taken was in form appropriate to the office held by him.

(4). SAME—FACTS CONSTITUTING CRIME OF BRIBERY—WHEN INDICT-
MENT CHARGING CRIME IS SUFFICIENT.

Where a coroner of the borough of Manhattan, who assumed to
act as such in a case of death resulting from an act of violence
committed in said borough, of which he would have had complete
jurisdiction if the death had occurred therein, issued a warrant in
due form of law signed by himself as coroner, he necessarily de-
cided that he had jurisdiction to act as such, and as the warrant
was valid on its face it was a complete protection to the officer
who made the arrest and brought the accused before him, and by
admitting the accused to bail he again decided that he had juris-
diction to act, and this decision was an official act within the mean-
ing of the statute; and, where such coronor asked and agreed to
take a sum of money, in consideration of which he promised to
discharge the accused, after hearing the charge against him, such
act constitutes the crime of bribery, since, while " in judicial place,"
he agreed to take a bribe for doing an act official in character and
which was in the nature of an " official proceeding," and, hence,
the indictment charging such coroner with the crime of bribery is
not defective because it charges that the suspicious death, which
was the subject of inquiry before him, is alleged to have occurred
in a foreign state, while the act causing death is alleged to have
been done in this state.

*People* v. *Jackson*, 121 App. Div. 856, 21 N. Y. Crim. 503 affirmed.

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered Novem-
ber 25, 1907, which reversed an order of the Court of General
Sessions of the Peace in the county of New York arresting
judgment after a verdict convicting the defendant of the crime
of bribery.

The defendant was indicted for the crime of bribery in
that, while a coroner of the borough of Manhattan, upon an
information duly laid before him as sŀch, he issued a warrant
to arrest one John W. Alexander for causing the death of
Maria Smith at the town of Montclair, in the state of New
Jersey, by a criminal act done by him in the borough of Man-
hattan, in the state of New York; that said Alexander when
arrested by virtue of said warrant and arraigned before the

defendant as coroner was admitted to bail, and an undertaking in due form of law was given for his appearance for examination on said charge; that while said proceeding was still pending before the defendant as coroner, he corruptly and feloniously asked and agreed to receive from one Benjamin Reass, the attorney for said Alexander, a bribe in the sum of $500, upon the agreement that his official action as coroner " should be influenced thereby, and that in consideration thereof he, the said Moses J. Jackson, would after the hearing of the said charge against the said John W. Alexander order that said John W. Alexander should be discharged." There was neither allegation nor proof that the dead body of Maria Smith had ever been in the state of New York or that it had been viewed by the defendant.

After a trial upon said indictment before tne recorder presiding at the court of General Sessions of the Peace, the jury found the defendant guilty. Thereupon a motion was made for an arrest of judgment and an order was granted arresting judgment accordingly upon the ground that the facts stated in the indictment do not constitute a crime. The district attorney appealed from said order to the Appellate Division which reversed the same and remitted the matter to the Court of General Sessions of the Peace to proceed according to law. The defendant appealed to this court.

*Julius M. Mayer and Frank Moss* for appellant. The defendant as coroner of the borough of Manhattan, in the county of New York, could not and did not acquire jurisdiction, either as coroner or magistrate, because the body of Marie Smith, whether dangerously wounded or dead was not in the borough of Manhattan, in the county of New York, and because such defendant, as coroner (or even as magistrate), could not acquire jurisdiction until he had viewed the body, and such view was concededly impossible by reason of the undisputed fact that the body in question lay in the state of New Jersey

when and while it is alleged that the coroner assumed to act. (*Crisfield* v. *Perine,* 15 Hun, 200; *People* v. *Worden, etc.,* 100 N. Y. 26; *People* v. *McLaughlin,* 57 App. Div. 454; *Miller* v. *City of Amsterdam,* 149 N. Y. 288; *Rex* v. *Ferrano,* 3 B. & Ald. 260.) The defendant was not a public officer in respect of the death of Marie Smith, nor did he perform any official act in connection therewith, because he never could possess the power or authority to perform an official act so long as he was unable to acquire jurisdiction. (*State* v. *Butler,* 178 Mo. 272; *State* v. *Mysenberg,* 171 Mo. 1; *Ex parte Richards,* 44 Tex. Cr. Rep. 561; *Gunning* v. *State,* 189 Ill. 165; *Comm.* v. *Reese,* 29 S. W. Rep. 352; *State* v. *Lehman,* 81 S. W. Rep. 1118; *Comm.* v. *Wilson,* 30 Penn. St. 26; *U. S.* v. *Boyer,* 85 Fed. Rep. 425; *Newman* v. *State,* 97 Ga. 367.)

*William Travers Jerome, District Attorney (Robert C. Taylor* of counsel), for respondent. In any event Jackson committed an official act. There is no dispute that he was a duly qualified public officer. The bribery sections say nothing whatever about a public officer having jurisdiction, but declare that a public officer is guilty of bribery who receives or agrees to receive money, upon any agreement, that his vote, opinion, judgment, action, decision or other official proceeding shall be influenced thereby. Penal Code, §§ 45, 71, 72; *Hallock* v. *Dominy,* 69 N. Y. 238; *Blythe* v. *Tompkins,* 2 Abb. Pr. 468; *Hunt* v. *Hunt,* 72 N. Y. 217; *People ex rel. Gaynor* v. *McKane,* 78 Hun, 154; *Morrell* v. *Dennison,* 8 Abb. Pr. 401; *Miller* v. *Brinkerhoff,* 4 Den. 118; *Staples* v. *Fairchild,* 3 N. Y. 41; *Skinnion* v. *Kelley,* 18 N. Y. 355; *Roderigas* v. *E. R. S. Inst.* 63 N. Y. 460; *Turner* v. *Sisson,* 137 Mass. 191; *Lammon* v. *Fensier,* 111 U. S. 17.)

VANN, J. The learned recorder held that the indictment was defective because it charged that the suspicious death, which was the subject of inquiry before the defendant as coroner, is alleged to have occurred in the state of New Jersey

while the act causing death is alleged to have been done in the state of New York.

The statute under which the indictment was found provides that " A judicial officer   *   *   * who asks, receives, or agrees to receive a bribe   *   *   * upon any agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding, shall be influenced thereby " is guilty of a felony.   (Penal Code, § 72.)

It is provided by the statute governing the duties of coroners that " Whenever a coroner is informed that a person has been killed or dangerously wounded by another, or has suddenly died under such circumstances as to afford a reasonable ground to suspect that his death has been occasioned by the act of another by criminal means, or has committed suicide, he must go to the place where the person is and forthwith inquire into the cause of the death, or wounding,   *   *   * and if it shall appear from the sworn examination of the informant, or complainant   *   *   * that any person, or persons, are chargeable with the killing or wounding, or that there is probable cause to believe that any person or persons are chargeable therewith, and if such person or persons, be not in custody, he must forthwith issue a warrant for the arrest of the person or persons charged with such killing or wounding; and upon the arrest of any person or persons, chargeable therewith, he must be arraigned before the coroner for examination, and the said coroner shall have power to commit the person or persons so arrested to await the result of the inquisition or decision."   (Code Cr. Pro. § 773.)

Section 783 provides that the coroner " when the defendant is brought before him, must proceed to examine the charge contained in the inquisition or information, and hold the defendant to answer or discharge him therefrom, in the same manner in all respects as upon a warrant of arrest on an information."

A motion in arrest of judgment can be granted only in two cases: 1. When the court has no jurisdiction over the subject of the indictment.   2. When the facts stated in the indictment

do not constitute a crime. *People* v. *Meakin,* 133 N. Y. 214; 8 N. Y. Crim. 404; Code Cr. Pro. §§ 323, 331, 467.) As it is conceded that the Court of General Sessions of the Peace in which the indictment under consideration was found and tried has jurisdiction of the crime of bribery, the power of the recorder to arrest judgment depends upon the sufficiency of the indictment itself. The question before us, therefore, is the same as if the defendant had demurred to the indictment upon the ground that the facts stated therein do not constitute a crime.

While the chief duty of a coroner is to hold an inquest when a suspicious death has occurred within his county, by recent legislation he has been given the power of a magistrate in a limited class of cases. (L. 1887, ch. 321; L. 1899, ch. 404.) He can exercise that jurisdiction only when some person has been killed or dangerously wounded by another, but in that class of cases he has the right to issue warrants, hold examinations and commit or discharge the accused, the same as any of the regular magistrates. He is, therefore, a judicial officer within the meaning of section 72 of the Penal Code, and, indeed, his duties as an inquisitor simply, were regarded as " principally judicial " as long ago as when Blackstone wrote his celebrated commentaries. (1 Blackstone's Com. *348, Sharswood edition.)

It is insisted that the indictment is defective because it shows upon its face that the defendant had no jurisdiction to act as coroner, inasmuch as it is alleged that the wounding took place in New York and the death in New Jersey, while it is not alleged that the dead body was ever within the state of New York or that the defendant viewed it therein. It is argued that for time out of mind the jurisdiction of a coroner depended upon a view of the body; that the Criminal Code makes it his first duty " to go to the place where the person is " who has been killed or dangerously wounded, and that the city charter

requires a view of " the body of such deceased person " by a
coroner's physician. (Code Cr. Pro. § 773; Consolidation Act,
§ 1773; Charter, § 1571.)

The decision of this appeal does not rest upon the actual
jurisdiction of the defendant as coroner, for, assuming that he
was without jurisdiction because he had not seen the unfor-
tunate woman after she was dangerously wounded and had not
viewed her body after death, still we think the indictment is
sufficient.

The defendant was in fact a coroner, and he assumed to act
as such in a case of death by violence, of which he would have
had jurisdiction if the death had occurred in the borough where
the act causing it was committed. He issued a warrant in due
form of law, signed by himself as coroner, and, hence, neces-
sarily decided that he had jurisdiction to act as coroner. He
issued it as lawful process, and, as it was valid on its face, it
was a complete protection to the officer who made the arrest
and brought the accused before the defendant. Thus, by exer-
cising powers purporting to belong to his office, he had a prisoner
on his hands. Clearly, he had the power to discharge the
prisoner even if he had no power to hold him for trial or admit
him to bail. He admitted the accused to bail, however, and
again necessarily decided that he had jurisdiction to act as
coroner. His decision was an official act within the true mean-
ing of the statute. He asked and agreed to take five hundred
dollars in money, and promised that in consideration thereof he
would discharge the accused after hearing the charge against
him. While " in judicial place," he agreed to take a bribe for
doing an act official in character and which was in the nature of
an " official proceeding." For a certain amount of money he was
to make a certain decision as coroner and it was because he had
power to make that decision that he was able to exact a bribe.
All his acts were official in form and all that he did was by color
of his office. He dealt with a subject over which he had juris-

diction. Every step he took, he assumed to take in his official capacity. An act may be official in character without being lawful and he neither pretended nor intended to act otherwise than officially. " An official act does not mean that which was lawfully done, but whatever was done under color or by virtue of the office." (*Inhabitants of Williamstown* v. *Willis,* 15 Gray [Mass.] 427, 430.)

The defendant complied with all the forms of law in attempting to act as coroner. His action was such as a coroner might properly take in a proper case. Every function he attempted to discharge belonged to the office which he held, and could have been performed with the full sanction of law if the victim had died in the borough of Manhattan. This case is not like some of those relied upon by the appellant where there was not only no jurisdiction in the particular case but there could be none in any case, because the function was foreign to the office and could not be exercised by the officer under any circumstances. Here the function was such as a coroner could perform when a certain fact existed and the defendant took jurisdiction and kept it just as if that fact had been proved before him. A coroner cannot act in a case of larceny, for instance, no matter what the facts are, but he can take cognizance of cases of dangerous wounding or violent death occurring in his county, for those subjects are intrusted to him by law. The latter class of cases belongs to his office, and when he assumes jurisdiction of such a case his action therein is so far official as to support an indictment against him if he accepts a bribe for doing an act apparently in the line of his duty. The learned Appellate Division so held in a carefully prepared opinion.

The law does not protect a corrupt judge because he exceeds his powers and his action is colorable merely. It does not mind whether when accepting a bribe to do an act apparently within his jurisdiction he actually had jurisdiction. The statute against bribery says nothing about jurisdiction and official action

20

means such as properly belongs to the office and is intended by
the officer to be official. It is sufficient if the defendant as-
sumed, *colore officii,* to perform a function belonging to his
office even if the right to perform it did not exist in the par-
ticular case. (*State* v. *Ellis,* 33 N. J. L. 102; *Glover* v. *State,*
109 Ind. 391; *State* v. *Lehman,* 182 Mo. 424; *Murphy* v. *State,*
124 Wis. 635; *People* v. *McGarry,* 136 Mich. 316; *State* v.
*Potts,* 78 Iowa, 656.)

Just as an officer *de facto* is punishable for malfeasance in
office the same as if he had been an officer *de jure,* so an officer
*de jure* acting apparently with, but really without jurisdiction,
is punishable for accepting a bribe the same as if he had had
complete jurisdiction, provided the action to be corruptly taken
was in form appropriate to the office held by him. (*State* v.
*Goss,* 69 Me. 22; Mechem on Public Officers, § 336; 1 Bishop
on Criminal Law, § 917.) We have just held that the City
Court of the city of New York has no jurisdiction of an action
against that city (*O'Connor* v. *City of New York,* 191 N. Y.
238), but is it possible that the statute against bribery has no
application to the discharge of official duties in the cases in
which that court assumed jurisdiction without having it?
(*Roderigas* v. *East River Savings Institution,* 63 N. Y. 460.)

No precedent in this state holds jurisdiction in the particular
case essential to establish the crime of bribery when the defen-
dant had general power as an officer to act in like cases upon
proof of a particular fact and we decline to follow such courts
in other states as have so held. The weight of authority is the
other way. We do not hold that the defendant is estopped from
denying that he had jurisdiction, but, as his action was in the
apparent line of his duty as a public officer, was official in form
and intended to be official in fact, that he was guilty if he ac-
cepted a bribe whether he had jurisdiction or not. Any other
rule would be a reproach to the law, for it would encourage
official corruption and tend to subvert the honest administration

of justice. The offense of the defendant, whether he was with or without jurisdiction is the same in morals and we think it is the same in the eye of the law.

The order of the Appellate Division should be affirmed.

CULLEN, Ch. J., GRAY, HAIGHT, WERNER, WILLARD BARTLETT and HISCOCK, JJ., concur.

Order affirmed.