Mr. Justice Bobb
delivered the opinion of the Court:
Section 39 of the Federal Penal Code, formerly sec. 5451, Rev. Stat. U. S. Comp. Stat. 1901, p. 3680, provides that whoever gives or offers to give any money or other thing of value, “to any officer of the United States or to any person acting for or on behalf of the United States in any official function, under or by authority of any department or office of the government thereof, or to any officer or person acting for or on behalf of either House of Congress or of any committee of either House, or hoth Houses thereof, with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity or in his place of trust or profit, or with intent to influence him to commit or aid in committing or to collude in, or allow, any fraud or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty,” shall be punished as therein specified.
Section 861 of the District Code (31 Stat. at L. 1330, chap. 854) provides for the punishment of any person who gives or offers to give any money or other thing of value, “to any executive, judicial, or other officer, or to any person acting in any official function, or to any juror or witness, with intent to influence the decision, action, verdict, or evidence of any such person on any question, matter, cause, or proceeding, or with in *467 tent to influence him to commit or aid in committing, or to collude in or allow, any fraud, or make any opportunity for the commission of any fraud.”
It is the contention of the government that there is material difference between the provisions of the two sections. The basis of this contention is the omission from the District Code of the words, “or which may by law be brought before him in his official capacity or in his place of trust or profit.” It is argued that while, under the Federal Code, the act to influence which the bribe is given must, under the terms of the Code, be some act within the scope of the official duties of the person bribed, it is only necessary under the District Code that the bribe should be given to one who assumes a duty which some official is authorized to perform. We are unable to accept this contention.
The word “function” is defined in the Century Dictionary to mean the fulfilment or discharge of a set duty or requirement ; the exercise of a faculty or office; that which one is bound or which is one’s business to do; business; office; duty; employment. When, therefore, Congress used the term “official function,” it had reference to acts official in character, something within the legal duty of the person performing them. It was well known that the word “officer” has a technical signification, and that many acts or duties of an important nature are legally intrusted to persons not officers at all. It was to cover just such a situation that the term “official function” was used. The logical result of the government’s contention is indeed startling. To illustrate: It was somebody’s duty to inspect the paper furnished by the defendant’s corporation. Under the government’s contention, if a person not connected with the government service in any way had assumed to inspect such paper or any consignment thereof, and the defendant, under the mistaken belief that such person really was a government agent or employee, had offered him a bribe, the offense of bribery would have been complete. Such cannot be the law. Before there can be an official function, there must be some duty, some responsibility. Thus, in State v. Butler, 118 Mo. 212, 77 S. W. 560, *468 the court say: “There is no rule so uniformly adhered to by the courts, both States and Federal, as the one That there can be no bribery of any official to do a particular act, unless the law requires or imposes upon him the duty of acting.’ ” See also United States v. Van Leuven, 62 Fed. 62; United States v. Ingham, 97 Fed. 935; United States v. Boyer, 85 Fed. 425; Benson v. United States, 27 App. D. C. 331.
The case of People v. Jackson, 191 N. Y. 293, 15 L.R.A. (N.S.) 1173, 84 N. E. 65, 14 A. & E. Ann. Cas. 243, the government contends, sustains its view. In that case Jackson, as a coroner of the city of New York, had issued a warrant for the arrest of one Alexander upon the charge of homicide, and had thereafter solicited a bribe from Alexander’s attorney for dismissal of the case. Jackson was convicted, and an arrest of judgment was sought upon the ground that the indictment was fatally defective because it showed that the death occurred in the State of New Jersey, and that the coroner had never viewed the body. The court sustained the conviction upon the ground that every function the defendant had attempted to discharge belonged to the office which he held; in other words, that the subject-matter was within the general scope of the defendant’s jurisdiction, and the question of his jurisdiction in the particular case was one primarily for his determination. The court said: “This case is not like some of those relied upon by the appellant, where there was not only no jurisdiction in the particular case, but there could be none in any case, because the function was foreign to the office, and could not be exercised by the officer under any circumstances.” It will be seen that that case is in no way inconsistent with the views we have expressed.
But this indictment avers that Zantzinger was an officer and -employee of the United States, that is to say, was United States postal card agent, and that, under and by virtue of his employment as such postal card agent, and the orders issued from time to time by the Third Assistant Postmaster General and by the Postmaster General of the United States, he was the agent of the Postmaster General in the premises, and as such agent was charged with the duty of inspecting the paper furnished by the *469 defendant’s company. In answer to this averment, it is insisted on behalf of the defendant that an examination of the laws and rules and regulations applicable to the Postoffice Department and to the Public Printer will show that Zantzinger was entirely without authority to inspect such paper or postal cards made therefrom. Let us see. Under the act of April 28, 1904, 33 Stat. at L. 440, chap. 1159, U. S. Comp. Stat. Supp. 1909, p. 943, there was created the office of purchasing agent for the Postoffice Department. The incumbent of the office was to he appointed by the President, and he was to report directly to the Postmaster General. The statute ordains that this purchasing agent “shall, under such regulations not inconsistent with existing law, as the Postmaster General shall prescribe, and subject to his direction and control, have supervision of the purchase of all supplies for the postal service.” It is further provided that all purchases, advertisements, and contracts for supplies for the Postoffice Department shall be made by the purchasing agent in the name of the Postmaster General, and subject to his approval. It will be observed that this act does not purport to relieve the Postmaster General from responsibility for contracts made with his Department. On the contrary, it expressly provides that the purchasing agent shall be subject to his direction and control, and that all contracts shall be made subject to his approval.
Under sec. 3916, Rev. Stat. U. S. Comp. Stat. 1901, p. 2619,. the Postmaster General “is authorized and directed to furnish and issue to the public, with postage stamps impressed upon them, ‘postal cards’ manufactured of good stiff paper, of such quality, form, and size as he shall deem best adapted for general use.” This statute imposes upon the Postmaster General the duty of issuing postal cards, and charges him with responsibility as to their quality. Postal card agents-have long been recognized by Congress, and their duties-have become fixed and well known. See sec. 143 of the-postal laws and regulations of 1902, and note thereto. The-postal appropriation act of March 1st, 1909, 35 Stat. at L. 668, chap. 232, U. S. Comp. Stat. Supp. 1909, p. 1017, *470 contains an appropriation of $217,000 for the manufacture of postal cards. This is followed by an appropriation “for pay of agents and assistants to examine and distribute postal cards, and expenses of agency, $8,360.” The paper which the defendant’s company was to furnish the government was a particular kind of paper to be used for a particular purpose. The contract so provided. The Public Printer, representing one Department of the government, was to manufacture that paper for another Department of the government. He recognized, as did the defendant’s company, the duty laid by law upon the Postmaster General. He knew, as did the defendant’s company, that in the purchase and manufacture of this paper for the Postoffice Department the duty thus laid upon the Postmaster General must be recognized; in other words, while under general requisitions by any of the Departments upon the Public Printer for supplies within his jurisdiction to furnish, the provisions of the act of January 12, 1895, 28 Stat. at L. 601, chap. 23, U. S. Comp. Stat. 1901, p. 2536, as to the inspection of paper used in the manufacture or preparation of those supplies, would exclusively govern, in this case an additional and independent inspection was required of the head of the Department ■for which the work was done. The contract of the defendant’s -company recognized all this. It in terms requires the paper furnished thereunder to conform in all respects to the specifi-cations theretofore issued by the Postmaster General, and makes those specifications a part of the contract. The indictment avers that Zantzinger, under and by virtue of his employment as such postal card agent, and the orders issued from time to time by the Third Assistant Postmaster General and by the Postmaster General of the Hnited States, was the agent of the Postmaster General mentioned in said specifications, and, as such agent, ■charged with the duty of inspecting postal cards and the paper from which they were made. We think this averment shows •that Zantzinger, in the acts mentioned, was charged with an official duty, and that in the performance of this, duty he was acting in an official function.
But, it is insisted, even assuming that the Postmaster Gen *471 eral was charged with the duty of inspecting the paper furnished by the defendant’s company, that duty under the statute must be performed exclusively by the purchasing agent. We think this contention unsound. While the purchasing agent, under the direction and control of the Postmaster General, is to have supervision of the purchase of all supplies for the Post-office Department, whether under contract or not, it is apparent that it would be a physical impossibility for him to perform his general duties and at the same time make the continuing inspections required under the various contracts of his Department. All contracts must be made in the name of the Postmaster General, and responsibility therefor rests primarily upon that official. The purchasing agent is at all times subject to his direction and control. If a contract has been made, it is apparent that someone must supervise its execution. It is equally apparent, as above suggested, that it would be impossible for the purchasing agent to supervise in person the execution of all contracts with the Postoffice Department. The Postmaster General recognized this, and Congress recognized it. The appropriation for the pay of postal card agents, to which reference has been made, and which was in usual form, taken in connection with said sec. 3916, Rev. Stat. fully authorized the Postmaster General to impose upon Zantzinger the duties set forth in the indictment, and those duties did not in any way conflict with the duties of the purchasing agent. It must be noted that the above appropriation for postal card agents “to examine and distribute postal cards” follows the act creating the office of purchasing agent. Moreover, it was quite competent for the Postmaster General to require an inspection additional to and independent of that made by the purchasing agent. Or he might have imposed upon Zantinger the duty of making an inspection in aid of the purchasing agent.
The point is also made that the contract, or, more properly speaking, the arrangement, between the Public Printer and the Postoffice Department, being for more than one year, was for that reason void, and hence, it is insisted, the inspection by Zantzinger was an idle thing. We do not deem it necessary to *472 inquire whether justification for the four years’ arrangement between the Postoffice Department and the Public Printer can be found in the statutes. Authority to enter into such an arrangement for a period of one year is not disputed. The Postmaster General and the Public Printer are officers of the government, and the arrangement they entered into was for the benefit of the government. Through them the government was really dealing with itself. They did not attempt to bind the government for the actual purchase of a pound of postal card paper not already appropriated for. Why, then, should we not recognize their mutual arrangement to the extent of their authority to make it ? We perceive no reason why their arrangement as to the manufacture into postal cards of the paper to be furnished under the contract of the defendant’s company should not be respected even if it be conceded arguendo that they were without authority to enter into an arrangement for a longer period. In other words, the mere declaration by these two agents of the government of an intent to continue their arrangement for four years, for such is the effect of their so-called contract, does not invalidate what was done during the first year. Under the contract with the defendant’s company, postal card paper was to be furnished for a period allowed by law. Under that contract, as well as under the arrangement between the two Departments, the responsibility of the Postmaster General was recognized, and it was agreed that he should have supervision over its execution. Zantzinger, it is averred, was the agent of the Postmaster General in inspecting that paper. He was therefore charged with an official duty, in the performance of which he was acting in an official function.
The further point is made that the'indictment on its face shows that no crime was committed. This contention rests upon the averment in the second count in respect to the manner in which the alleged bribery was accomplished. In our view, the averments relating to the circumstances surrounding the sending of the money to Zantzinger, together with the avérment respecting the intent with which it was sent, are amply sufficient to make a prima facie case against the defendant.
Judgment affirmed. Affirmed.