186 P.2d 943

## STATE v. HENDRICKS.

No. 978.

Supreme Court of Arizona.

Nov. 17, 1947.

Darrell R. Parker, of Phoenix, and H. Karl Mangum, of Flagstaff, for appellant.

W. Dean Nutting, of Holbrook, County Atty., Navajo County, for appellee.

STANFORD, Chief Justice.

This is an appeal from a judgment of conviction of defendant for the crime of bribery. The information charged that:

"The said Harry T. Hendricks on or about the 15th day of February, 1947, * * * did then and there wilfully, unlawfully and feloniously give a bribe of Seventy-five dollars ($75.00), * * * to Richard Lewis Whitlow, * * * an Arizona Highway Patrolman, with the corrupt intent * * * then and thereby, * * * corruptly to influence the said Richard Lewis Whitlow to not report to the county authorities * * * any reports or complaints of persons who had been gambling at the Log Cabin Trading Post, near Sanders, Arizona, which would enable the said operators of the said gambling place at the Log Cabin Trading Post to avoid prosecution for the unlawful opening, carrying on and conducting at said place certain unlawful games with cards and dice, * * *."

Upon trial defendant was found guilty of the crime charged and has appealed to this court from the trial court's judgment of conviction and sentence; the denial of a motion in arrest of judgment; and also the court's order denying defendant's motion for a new trial. The defendant took the witness stand and frankly admitted giving $70 in currency to Patrolman Whitlow in Holbrook, Navajo County, after discussing with him grievances of the travelling public communicated to the patrolman relative to gambling at the establishment known as the Log Cabin Trading Post near Sanders in Apache County. Defendant further admitted that at that time he suggested to the patrolman that it would be just as easy to refer aggrieved persons back to the establishment for a refund of their gambling losses as to refer them to the Apache County authorities at St. Johns. Defendant, however, emphatically denied that he had a criminal intent in offering to bribe the patrolman or to influence him corruptly in the performance of his duties, it being his contention that acting under the orders of the Attorney General of the State, whose representative he claimed to be, he was merely engaged in testing the honesty and integrity of the officer Whitlow. The State on the other hand contended that all of the activities of defendant at the time of the commission of the alleged offense, and some months prior thereto, were part of a scheme and plan furthered, encouraged, and actively participated in by the Attorney General to

promote and control gambling operations in the State of Arizona, and to bribe and corrupt county and other public officials in order to assure their noninterference with such operations.

Defendant has presented thirty-eight assignments of error committed by the trial court but has included all in five propositions of law. The first three assignments of error pertain to a denial of a continuance requested by defendant for the trial date of the case in the superior court and are included in Proposition of Law No. 1, and that proposition of law is: " Continuance should be granted where the ends of justice will be served thereby." Defendant on this subject refers to this court's case of City of Tucson v. O'Reilly Motor Co. 64 Ariz. 240, 168 P.2d 245, 252, decided April 22, 1946, which case enters into the matter of continuances, but from that case this court adopted a paragraph from 17 C.J.S., Continuances, § 22, as follows: "As a general rule a continuance for want of preparation will be refused. An applicant, to be entitled to relief on such ground, must show some precise legal or strong equitable reason and the exercise of reasonable diligence in every direction in which he claims to be unprepared."

Section 21-801, A.C.A. 1939, says: "Whenever an action has been set for trial on a specified date by order of the court, no postponement of the trial shall be granted except for sufficient cause, supported by affidavit, or by consent of parties, or by operation of law."

Counsel for defendant in compliance with both sec. 21-801, supra, and sec. 44-1605 did make proper application for continuance accompanied by supporting affidavits and a certificate that such application was made in good faith and without any purpose of delaying or hindering the State of Arizona in the prosecution of said cause.

Defendant, 51 years of age, had been in police work as a detective and otherwise since 1915, and from 1930 to 1945 was continuously employed as a highway patrolman by the State of California. Because of some disability he was retired from that duty on a pension. He came to Phoenix, Arizona, in 1946. Defendant was arrested on the 20th day of February, 1947. Preliminary hearing was held on the following March 1st. At that preliminary hearing defendant had counsel in Mr. Guy Axline of Holbrook, Arizona, the place of the trial, and Mr. Axline is known to be one of the most capable attorneys of our state. Defendant was arraigned, entering his plea of not guilty, on March 15, 1947, at which time the case was set for trial on March 27, 1947. He was not then represented by counsel. It is plain in the affidavits, however, that defendant did not secure present counsel for the trial of the case until the 21st day of March. His two attorneys, Mr. Darrell R. Parker of Phoenix, Arizona, and Mr. H. Karl Mangum, former superior court judge of Coconino County, Arizona, cannot be excelled for their astuteness and ability as attorneys of the bar of our state. Defendant

was a man of considerable experience who knew the operations of the law and had funds with which to employ counsel of his own choosing. Section 44-1033, A.C.A. 1939, provides: "Time to prepare for trial. —After a plea of not guilty the defendant is entitled to at least two (2) days to prepare for trial unless the court for good cause shown shall allow further time."

■■ Here the trial commenced thirty-five days after his arrest, and some twelve days after the entering of his plea of not guilty. The fact that defendant saw fit to delay the employment of counsel who actually represented him at the trial is not legal grounds for a continuance, furthermore the record shows that he was very ably represented. We stated in the case of Quayle v. State, 19 Ariz. 91, 165 P. 331, 333, that: "The granting of a postponement of the trial is a matter within the sound legal discretion of the trial court, and, when the action of the court is brought into question on appeal, the ruling made will not be disturbed by an appellate court unless it is made to appear that such discretion has been abused, to the defendant's prejudice."

We do not consider the court in this case abused its discretion, and hence there is no merit to the assignment.

We next are confronted with defendant's claim that no criminal offense is charged in the information or shown by the proof because, as a matter of law, "There can be no bribery of any officer by offering him a reward to do or refrain from doing a particular act not within the scope of his official authority."

There are no common-law crimes in Arizona, sec. 43-101, A.C.A.1939. And the pertinent portion of the statute here applicable, sec. 43-1702, reads as follows: "Public officer—Bribery.—Every person who gives or offers any bribe to any public officer with intent to influence him in respect to any act, * * * or other proceeding *as such officer* is punishable * * *." (Emphasis supplied.)

Defendant contends that the emphasized portion of the above statute restricts the crime of attempted bribery to the attempt to influence only those actions or matters which come within the official scope of the officer's duties. And looking to the statutes that set forth the duties of highway patrolmen, defendant concludes that directing highway travelers who have been "fleeced" in gambling games at establishments along the highway to the proper authorities to report their grievances is so definitely outside the highway patrolman's duties that to offer money to influence his actions in this regard would not be offering a bribe.

■ There can be no question but that a highway patrolman is both a public officer within the terms of the above-quoted statute and a peace officer. Sec. 12-101; Hoy v. State, 53 Ariz. 440, 90 P.2d. 623; Industrial Commission v. Arizona State

240

Highway Commission, 61 Ariz. 59, 145 P. 2d 846; Russell v. Glascow, 63 Ariz. 310, 162 P.2d 129. Sec. 66-701 says in part: "* * * The patrol superintendent and the highway patrolmen shall be vested with the authority of peace officers for the purpose of enforcing the laws relating to the *use of highways* and the operation of vehicles thereon but shall never be used as peace officers in connection with any strike or labor dispute. * * *" (Emphasis supplied.)

And sec. 66-704 setting forth the duties of the patrol states in part that: "It shall be the duty of the Arizona highway patrol to patrol the highways of the state, both day and night, and enforce the laws relating to the *use of* highways; * * *." (Emphasis supplied.)

█ First, only a highly restrictive definition of the statutory phrase "use of highways" would fail to include their use as a funnel from which to draw innocent participants for illegal gaming. And only a hypertechnical interpretation of the statute would deny that directing travelers on the highway to proper law enforcement officers is beyond the scope of the proper duties of a patrolman. Statutes must be construed as to the fair import of their terms. Our statute on attempted bribery of public officials, sec. 43-1702, though a part of the Penal Code is likewise subject to fair and not strict construction, since sec. 43-102 of the Penal Code points out: "* * *. The rule of the common law

that penal statutes are to be strictly construed, has no application to this Code; its provisions are to be construed according to the fair import of their terms, with a view to effect its object and to promote justice. * * *"

█ It takes but a brief description of the actual physical setup of Patrolman Whitlow's beat to be impressed with the fact that directing highway travelers to proper law enforcement officers must fairly be a part of his duties. We are dealing here with U. S. Highway 66, the busiest transcontinental highway crossing the State of Arizona; a road used by thousands of cars daily. Roadside proprietors have, because of this highway, a market from which to draw equivalent to the population of a large city. Highway patrolmen are the only representatives of the law visible to the travelling public in this area. They are guardians of the public safety and are the only ones in evidence on this stretch of road with uniforms and official cars. The county seat at which travelers must file their complaints to begin prosecution against illegal gaming activities carried on at the Log Cabin Trading Post in question is some 60 miles off U. S. Highway 66 over a country road—a place that travelers on this highway would not go over and would not find without directions. The fact that Whitlow and his fellow patrolman in that area were "key men", and necessary links in the chain of bringing roadside gamblers to justice, was a fact well recognized by

defendant. Had Patrolman Whitlow agreed to carry out the terms of the attempted bribe, travelers illegally duped out of their money, anxious to be reimbursed and on their way, would have been sent back to the lawbreakers, and not the law. As a peace officer it was certainly within the scope of Whitlow's duties to report known violations of criminal law and to assist those who make such complaints to find the proper officers by whom and before whom complaints must be filed. If he failed so to do he would be violating his oath of office, sec. 12-301, by failing to "* * * support the * * * laws of the state of Arizona * * * and defend them against all enemies whatsoever and * * * discharge the duties * * * according to the best * * * (of his) ability * * *." And had he agreed to the scheme he would now be estopped to plead his alleged lack of authority as a defense. In this regard we cannot help but be impressed with the language used by Spear, J., in State v. Gardner, 54 Ohio St. 24, 42 N.E. 999, 1005, 31 L.R.A. 660; 115 A.L.R. 1266, in concurring with the majority decision that one charged with offering a bribe to a city commissioner could not defend on the ground that the statute under which the commissioner held office was unconstitutional: "* * * If the acting commissioner be good enough officer to be bribed, ought he not to be held good enough officer to answer the designation of the statute in order to punish the briber? * * * The statute which prescribes pun-ishment for accepting a bribe also prescribes punishment for giving it. What a travesty on justice would be presented by the judgment of a court, acting on the same facts, and applying the same criminal statute, which says to the tempted officer, 'You will go to the penitentiary,' and to the wily fowler who spread the net, and gathered in his grasp the ill-gotten gain, 'You may go free.'"

As to defendant's proposition of law that there can be no bribery of an officer outside the scope of his official duty, we have no quarrel. But it must be fairly construed. The reason for making it an offense to bribe a public officer is because of its tendency to pervert justice. Therefore, although there is a definite split of authority, the numerical weight of decisions, the text writers, and what we believe to be the best-reasoned opinions support the proposition that if the matter toward which the attempted bribe is directed has an actual relation to the officer's official duties it is immaterial that the law may be silent upon the officer's power to act or failure to act in the particular matter at hand.

"An officer's conduct need not be specifically prescribed by statute in order to constitute official action, and it is sufficient that the duty exists by reason of natural implication from the powers specifically granted by statute, or by reason of the lawful custom or regulation of a department of government. * * * *The bribery of an officer to facilitate proposed unlawful con-*

*duct even in matters which such officer cannot finally determine may, nevertheless, constitute an inducement of action on matters within his official capacity.*" 11 C.J.S., Bribery, § 2, subsec. e (1). (Emphasis supplied.)

"While the decisions on the subject are not altogether in harmony, by the great weight of authority, the giving or receiving of money, etc., for the purpose of influencing official conduct is not deprived of its criminal character by the fact that the action contemplated is not within the officer's jurisdiction. If he acts in his official capacity—and by this term is meant the doing of such acts as properly belong to the office and are intended by the officer to be official—the offense is complete. The validity or invalidity of the act to be done, or whether the officer or the body in question had or had not jurisdiction, is generally immaterial * * *.

"Of course, if the person soliciting or accepting a bribe is neither holding an office embraced within the bribery statute nor acting under color of title to such an office, he cannot be held on a charge of bribery." 8 Am. Jur., Bribery, secs. 14, 15.

"The act intended to be influenced must be connected with one's official or public duty, although the duty may possibly arise only in the future, but if the act is associated with official duty, it is immaterial whether the bribed person has, or has not, authority to do that specific thing, since the essence of the crime is the fact that he agreed to do it under color of office." 1 Burdick, Law of Crime, sec. 291. See also 3 Wharton's Criminal Law, 12th Ed., sec. 2234 and ff.; 4 R.C.L., Bribery, sec. 13; 115 A.L.R. 1263; 122 A.L.R. 951.; People v. Jackson, 191 N.Y. 293, 84 N.E. 65, 15 L.R.A.,N.S., 1173, 14 Ann.Cas. 246; Haas v. Henkel, 216 U.S. 462, 30 S.Ct. 249, 54 L.Ed. 569; United States v. Birdsall, 233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930; Daniels v. United States, 9 Cir., 17 F.2d 339; Krichman v. United States, 2 Cir., 263 F. 538; McGrath v. United States, 2 Cir., 275 F. 294; Taylor v. State, 44 Ga. App. 387, 161 S.E. 793; People v. Markham, 64 Cal. 157, 30 P. 620, 49 Am.Rep. 700; Harris v. Superior Court, 51 Cal.App. 15, 196 P. 895. Contra: State v. Hart, 136 Wash. 278, 239 P. 834; State v. Butler, 178 Mo. 272, 77 S.W. 560; State v. Adams, 308 Mo. 664, 274 S.W. 21; Taylor v. State, 42 Ga.App. 443, 156 S.E. 623.

The rule requiring that the matter in which the bribe is attempted be related to the officer's duty before it can be a crime, is a wise one. The possible perversion of justice is the touchstone and guide. And though it might be morally improper and may well involve some other crime to give or offer money to an officer to do an act totally unrelated to his job, it would not be bribery. Once the gist of the crime is apparent, a strict and technical interpretation of an officer's duty becomes as senseless to logic as it is legally deplored by the weight of authority.

In Kemler v. United States, 133 F.2d 235, 238, the First Circuit Court was concerned with a draft registrant who offered money to an examining physician to make a false report finding him ineligible for active military duty. There was some doubt as to whether the physician could make the report in question. In finding this to be attempted bribery the court said: "The clear purpose of the statute is to protect the public from the evil consequences of corruption in the public service. Thus the gravamen of the offense described therein is the giving or offering of a bribe to a person acting on behalf of the United States for the purpose of influencing official conduct."

Again, in one of the best-reasoned opinions on this subject of recent date (State v. Cooney, 23 Wash.2d 539, 161 P.2d 442, 445), the Washington court was concerned with whether a police officer was guilty of bribery in accepting a diamond ring from a prisoner upon the agreement to release him from custody though knowing him to be guilty of having carried a concealed weapon. The defendant argued that it was incumbent upon the state to prove that he had within the specific scope of his duties as an officer (as set forth by city ordinance) the right to release a prisoner from custody when under arrest for an offense against the law. In denying the validity of this line of reasoning the court said: "Whether or not he did something which, as a police officer, technically he had no right to do is immaterial so long as the act was not entirely beyond his official duties as such officer."

For the foregoing reasons then, we believe that the nine different assignments all directed to the general proposition that Patrolman Whitlow could not be bribed in this matter, are without merit.

The fourth proposition of law is: "It constitutes prejudicial misconduct for the prosecutor to fail to present impeaching testimony of a damaging character where he has laid the foundation for it."

The basis for this proposition of law is the following questions that were asked of defendant by the prosecutor when he was on the witness stand.

"Q. (by Mr. Nutting) And didn't you also go over into New Mexico and contact some New Mexico officers? A. I never contacted a New Mexico officer in my whole life.

"Q. Have you been over in New Mexico? A. I have been in New Mexico and I have stopped there and I have stopped there overnight with Mr. Eagles, at the, I believe they call it the inn, I don't know just what they call it, the El Rancho, or whatever it is; I have never seen an officer.

"Q. You didn't talk to a Sante Fe officer in New Mexico? A. No, I never talked to nobody.

"Q. And tell him you had things all fixed up in Arizona? A. Not me, no, no sir."

Defendant quotes in support of this contention from our recent case of State v. Singleton, 182 P.2d 920, 930, decided July 11, 1947, not yet reported [in State reports]: "But when, as here, such questioning is raised and then dropped with no further attempt on the part of the State to prove its point, the aforementioned 'fishing expedition' having failed, we believe it to be wholly improper and highly prejudicial. To allow this sort of examination would be to allow the imaginative and overzealous prosecutor to concoct a damaging line of examination which could leave with the jury the impression that defendant was anything that the questions, by innuendo, seemed to suggest. If the questions were persistent enough and cleverly enough framed, no amount of denial on the part of a defendant would be able to erase the impression in the mind of the jury that the prosecutor actually had such facts at hand and that probably there was some truth to the insinuations."

■■ · Only prejudicial error is grounds for reversal. Here the question asked was so ambiguous that it might refer to having gambling under control for law and order; to the reverse, or it might not refer to gambling at all. It is a quite different situation than the one confronting the court in the Singleton case where a man on trial for murder who had as his main defense his reputation as a peaceful law-abiding citizen was asked if he had not previously threatened to kill. We hold that the line of questioning raised and then dropped in the case at bar, though error, does not constitute prejudicial error.

■ Proposition No. 5 is pertinent to fifteen assignments of error but we believe the only important assignment not elsewhere considered concerns allowing in evidence the copy of the following letter from the county attorney, W. Dean Nutting, to the Attorney General of Arizona:

March 12, 1947.

Mr. John L. Sullivan,
Attorney General,
Phoenix, Arizona.

Re: State of Arizona v.
H. T. Hendrix, Bribery.

Dear Mr. Sullivan:

After I received your letter requesting me to dismiss the above case, I received a letter from Governor Osborn asking me not to dismiss the case but to proceed with the prosecution. In view of these circumstances and others in connection with the case, I will be unable to comply with your request for dismissal.

Very truly yours,
W. Dean Nutting
County Attorney"

WDN:cb

It is the claim of defendant that the letter "was tantamount to telling the jury that the chief executive of the State of Arizona was satisfied of the guilt of the appellant." On

the examination of the Attorney General, these questions and answers were given and made:

"Q. Do you know what action the governor of Arizona took with reference to your efforts to dismiss the case? A. Well, I, No, I would have to say no.

"Q. Well, as a matter of fact, you do know, don't you? A. Well, as a matter of fact I wouldn't specifically know, except on hearsay.

"Q. Well, what did you learn? A. I learned that Mr. Nutting and the governor discussed the matter and it was the governor's idea that let Mr. Nutting proceed if he felt that was the—

"Q. It wasn't his idea, it was his specific order? A. I don't know that, Mr. Greer."

Following that, the impeaching letter in question was admitted in evidence. We feel that its admission was entirely proper as can be seen from the testimony above quoted.

■ Also under Proposition of Law No. 5 is treated Assignment No. 32 where error is assigned on the trial court's refusal to give the following proposed instruction: "You are instructed that if a person makes a gift, or offer or promise to an official with the bona fide intent to test the official integrity of such officer, in order to determine whether or not such officer would accept a bribe, such person making such gift or offer or promise would not be guilty of

the crime of bribery under the law. State v. Meehan, 160 S.C. 111, 158 S.E. 151, 154."

However, it is clear that other instructions that were given by the court fully apprised the jury that there could be no conviction unless the state convinced them that the act charged was done with corrupt intent; that such is an essential element of attempted bribery; and that there could be no conviction under the facts of this case if they believed that the money offered to the public official in question was with the intent to test his integrity as such. We therefore hold that this assignment is without merit.

■ Defendant complains of the failure of the trial court to instruct the jury on the limited purpose for which evidence of his previous similar approaches to public officials other than Patrolman Whitlow, was admissible. After the court had completed the reading of its instructions to the jury and when they were ready to retire, defendant's counsel orally requested the court to read as an instruction the general language in Taylor v. State, 55 Ariz. 13, 97 P.2d 543, 546, pertinent to this subject. That language appearing in the Taylor case, supra, as a quotation from a California Appellate decision (People v. Cosby, 137 Cal.App. 332, 31 P.2d 218) reads as follows: " 'While it is the general rule that a defendant in a criminal case cannot be tried for *any other offense* than that with which he is charged in the information, and that evidence of

246

*other and distinct offenses* is not admissible, still there are exceptions to this general rule, one of which is that where *several crimes are committed* as a part of one scheme or plan, all of the same general character, tending to the same common end, they may be given in evidence to show the process or motive and design leading up to the particular crime 'for which the prisoner is being tried, as tending to show logically that the crime in question was part of such common scheme.' " (Emphasis supplied.)

There is nothing the matter with this quotation as 'a general statement of law, but as applied to the facts of the case at bar giving such an instruction would clearly have been error. As, the emphasized portions of the above quotation indicate, it is *assumed* therein that previous *crimes* have been committed. Although the defendant before us frankly admits to having made the previous approaches to other public officials upon which evidence was admitted, it is the very heart and core of his theory of defense that instead of constituting attempted bribery these approaches, like the one made to Officer Whitlow here under consideration, were really but efforts to test and insure the honesty of public officials. Had the trial judge given this as an instruction it would have been an improper comment upon the evidence because in effect the court would have been telling the jury that other similar offenses had been committed by defendant Hendricks. It must be kept in mind that the instruction actually given in the

Taylor trial and approved by this court in the reported case does not appear therein. Therefore the trial judge in the case at bar would have been unable to find that approved instruction in the copy of the reported case handed him by defense counsel. As this constitutes a part of our records we have carefully reread the instruction that actually was given and it is important to note that the trial judge in the Taylor case carefully guarded against just such pitfall as would have occurred here had the excerpted statement of law been given as an instruction. After stating the law regarding the admission of evidence of similar offenses, the trial court in the Taylor case finished with this carefully qualifying statement: " * * * and you may not consider the same (referring to evidence of similar offenses) for any other purpose, *and if you do not find beyond a reasonable doubt that the above (similar offenses) existed it is your duty to disregard such testimony entirely."* (Emphasis and explanatory inserts supplied.)

▆▆▆▆▆ In this jurisdiction the court is under no duty to give instructions that counsel have not requested. Burgunder v. State, 55 Ariz. 411, 103 P.2d 256. And this applies as well to instructions on the law of similar offenses. Greve v. State, 36 Ariz. 325, 285 P. 274; James v. State, 53 Ariz. 42, 84 P.2d 1081. Certainly the court is under no duty to give an instruction offered by defendant that if given would constitute error.

Finally the defendant has appealed from the sentence imposed (six to ten years in the State Penitentiary) on the ground that it is excessive. Under the provisions of sec. 44-2537, this court is given the power to reduce the extent or duration of the punishment if, in its opinion, the conviction is proper but the punishment imposed is greater than under the circumstances of the case ought to be inflicted. The legislature has prescribed a minimum of one year and a maximum of fourteen years as the limits of sentence on a bribery conviction. Sec. 43-1702, A.C.A.1939. Considering that any attempt to influence the official conduct of a public officer which has a tendency to swerve him from his clear line of duty strikes at the very foundation of the administration of justice, we do not consider the sentence excessive.

Although there are other assignments of error, those meriting consideration have been discussed. The defendant has been given a fair and impartial trial as guaranteed by law. No error has been found of a nature prejudicial to defendant's rights as would justify a reversal. We have heeded the mandate given us by art. 6, § 22 of the Arizona Constitution: " * * * No cause shall be reversed for technical error in pleading or proceedings when upon the whole case it shall appear that substantial justice has been done."

Therefore the judgment of the superior court is affirmed.

LaPRADE and UDALL, JJ., concurring.