Burton B. Roberts, J.
Defendant, John Burke, moves to dismiss this indictment, which charges him with a violation of subdivision 3 of section 448 of the Election Law. This subdivision provides as follows:
"§ 448. Corrupt use of position or authority
"Any person who: * * *
"3. Makes, tenders or offers to procure, or cause any nomination or appointment for any public office or place, or accepts or requests any such nomination or appointment, upon the payment or contribution of any valuable consideration, or upon an understanding or promise thereof * * *
"Is guilty of a felony.”
According to the indictment, Congressman James Delaney and one James Eagan were seeking the Republican Party’s nomination for Congressman from the Ninth Congressional District in a primary campaign conducted during the summer of 1974. The defendant, it is alleged, was assisting Eagan in his campaign and was also associated with him in a business venture that was seeking to obtain mortgage financing for the Windsor Hotel in Sullivan County. The gravamen of the charge is that on July 8, 1974, the defendant met with Patrick Delaney, the latter being Congressman Delaney’s son and an investment banker, and, in the words of the indictment, "offered to cause James Eagan to withdraw from [the] primary election, thereby causing James Delaney’s nomination to be uncontested, if Patrick Delaney agreed to secure and secured particularly described financing for a mortgage on the Windsor Hotel.” "Thus”, the indictment concludes, "the defendant offered to procure and cause the nomination of James Delaney as the candidate of the Republican Party for the United States *1007 House of Representatives, for the Ninth New York Congressional District upon the payment, understanding and promise of payment of a valuable consideration.”
The defense contends that these allegations fail to charge a crime under the statute because the defendant’s alleged offer to obtain the withdrawal of Eagan could not, as a matter of law, constitute an offer to "procure” or "cause” the nomination of Delaney as provided therein. This contention is based on various provisions of articles 6 and 6-A of the Election Law which establish that an Eagan withdrawal, effected by the failure to file his designating petitions or by his declination of the designation, could not prevent the possible designation of another candidate by petition or by "write-in” petition in the former instance and by the filling of the vacancy by the committee on vacancies in the latter.*
Not disputing the possibility of another candidate, the District Attorney nevertheless argues against dismissal by drawing the analogy to certain case law pertaining to the bribery offenses which holds those crimes to be complete upon the bribe receiver’s promise to act, even though the contemplated result is beyond his authority to accomplish (citing People v Chapman, 13 NY2d 97, People v Jackson, 191 NY 293 and People v Mitchell, 40 AD2d 117).
This analogy is clearly inappropriate. The bribery statutes are materially different from the Election Law provision charged in this indictment. Under section 200.10 of the Penal Law, the crime of bribe receiving is committed when a public official corruptly agrees that his "vote, opinion, judgment, action, decision or exercise of discretion as a public servant * * * be influenced.” Virtually identical language was contained in sections 372 and 378 of the Penal Law of 1909. The cases cited by the People merely hold that such a crime is complete when an official not holding the actual authority over a matter agrees nevertheless to do an act which he has at least colorable authority to accomplish (People v Chapman, supra, 13 NY2d 97, 101, citing People v Jackson, supra, 191 NY 293, 300-301), or when an official without power agrees nevertheless to influence the judgment or action of other public officers in whom such power is vested (People v Mitc *1008 hell, supra, 40 AD2d 117, 122). The Election Law provision employed herein, however, is not nearly as broad. The conduct it prohibits is an offer to "procure” or "cause” a nomination. What is alleged here is merely an offer to obtain the withdrawal of a candidate. This may well have affected the outcome of the contest but it is not what the statute prohibits.
The following reference by the Court of Appeals in People v Willett (213 NY 368) to the history of section 775 of the Penal Law of 1909, from which the present section 448 of the Election Law was derived, demonstrates the true aim of the statute as being against corrupt bargains by so-called "bosses” and power-brokers and confirms that the type of offer alleged in this case was never contemplated by the Legislature as one to "procure or cause” a nomination (pp 376-377):
Prior to 1892 much has been said and written about the power wielded by political leaders, or so-called "bosses” in the state and in the subdivisions thereof. In the second edition of "The American Commonwealth” by James Bryce, which was issued in 1891, in discussing American politics and the power of individuals to control party nominations, he says: "There is usually some one person who holds more strings in his hand than do the others. Like them, he has worked himself up to power from small beginnings gradually extending the range of his influence over the mass of workers and knitting close bonds with influential men, outside as well as inside politics, perhaps with great financiers or railway magnates whom he can oblige and who can furnish him with funds. * * * He dispenses places, rewards the loyal, punishes the mutinous, concocts schemes, negotiates treaties. * * * Another useful expedient has been borrowed from European monarchies in the sale of nominations and occasionally of offices themselves. A person who seeks to be nominated as a candidate for one of the more important offices such as a judgeship or a seat in the state senate in Congress, is often required to contribute to the election fund a sum proportioned to the importance of the place he seeks, the excuse given for the practice, being the cost of elections; and the same principle is occasionally applied to the gift of non-elective offices, the right of appointing to which is vested in some official member of a Ring— e.g., a mayor.”
By chapter 693 of the Laws of 1892, title 5 of the Penal Code was generally amended and several sections added, *1009 including section 41v, which was, except in punctuation, the same as section 775 of the present Penal Law. It was enacted, as we have seen, after the criminality of bargaining for office to be obtained by the appointment or nomination of a public officer or through a nomination at a political convention had been generally discussed and called to public attention by the press, and at a time when such corrupt bargaining on the part of any person with power by reason of position or authority, official or otherwise, to make or control appointménts or nominations, was quite universally condemned. The legislature was attempting, as appears from the act of 1892, to prevent bargaining in offices.
Sheer logic also dictates the inapplicability of the section charged. Under the People’s theory of the instant case, the defendant’s offer would violate the statute in the case of a two-candidate race but would not do so if a third candidate were present. The Legislature could not have intended such an incongruous approach to regulation.
The foregoing, however, is not to say that the conduct alleged in the indictment is legal. The District Attorney has merely elected to proceed under the wrong provision of the Election Law. Subdivision 5 of section 421 provides as follows:
"§ 421. Misdemeanors at, or in connection with, political caucuses, primary elections, enrollment in political parties, committees, and conventions
"Any person who: * * *
"5. Fraudulently or wrongfully does any act tending to affect the result of any election at a political caucus or of any primary election or convention * * *
"Is guilty of a misdemeanor.”
In People v Lang (36 NY2d 366) the Court of Appeals recently upheld the conviction under this provision of an individual who offered a sum of money to a potential rival to induce him not to run in a primary election. Said the court (p 370): "[W]e think it is readily apparent that the enactment is designed to outlaw any fraudulent or wrongful act tending to affect the result of a primary election.”
For the foregoing reasons, defendant’s motion to dismiss the indictment is granted.

 Pursuant to section 149-a of the Election Law, designating petitions could be filed no earlier than July 11 and no later than July 15, 1974 (subd 4); the last day to file a declination of a designation was July 19, 1974 (subd 6); the last day to file a petition for opportunity to ballot without naming a candidate was July 22, 1974 (subd 7).